# FRANCHISE TAX BOARD OF CALIFORNIA *v.* UNITED STATES POSTAL SERVICE

No. 83–372.   Argued April 17, 1984—Decided June 11, 1984

*Patti S. Kitching*, Deputy Attorney General of California, argued the cause for appellant.   With her on the briefs were *John K. Van De Kamp*, Attorney General, and *Edmond B. Mamer*, Deputy Attorney General.

*David A. Strauss* argued the cause for appellee.   With him on the brief were *Solicitor General Lee, Acting Assistant Attorney General Willard, Deputy Solicitor General Geller*, and *Joan M. Bernott.*\*

JUSTICE STEVENS delivered the opinion of the Court.

Appellant, the Franchise Tax Board of California, determined that four employees of appellee United States Postal Service were delinquent in the payment of their state income taxes.   The Board served process on the Postal Service directing it to withhold the amounts of the delinquencies from the employees' wages, pursuant to § 18817 of the California Revenue and Taxation Code, which authorizes the Board to

---

\*A brief of *amici curiae* urging reversal was filed for the State of Delaware et al. by *Stephen H. Sachs*, Attorney General of Maryland, and *Diane G. Motz*, Assistant Attorney General, *Charles M. Oberly III*, Attorney General of Delaware, and *John Fidele*, Deputy Attorney General, *Hubert H. Humphrey III*, Attorney General of Minnesota, and *Kent G. Harbison*, Chief Deputy Attorney General, *Dave Frohnmayer*, Attorney General of Oregon, and *William F. Gary*, Deputy Attorney General, and *LeRoy S. Zimmerman*, Attorney General of Pennsylvania, and *Jay A. Molluso*, Chief Deputy Attorney General.

require any employer to withhold delinquent taxes from an employee's salary and transfer those funds to the Board.[1] The question presented is whether the Postal Service was obligated to honor these "orders to withhold."

## I

When the Postal Service refused to comply with the four orders to withhold, the Board filed this action in the United States District Court for the Central District of California asserting that the Service was liable under the Revenue and Taxation Code for failing to honor the orders,[2] and invoking federal jurisdiction pursuant to 39 U. S. C. § 409(a) and 28 U. S. C. § 1339.[3] The District Court entered summary judgment for the Postal Service. It held that 5 U. S. C. § 5517, which authorized the agreement that California and the United States had made regarding the withholding of state income taxes from the pay of federal employees, applies only to withholding of anticipated tax liabilities and not to

[1] The statute provides in pertinent part:

"The Franchise Tax Board may by notice, served personally or by first-class mail, require any employer . . . having in [its] possession, or under [its] control, any credits or other personal property or other things of value, belonging to a taxpayer . . . to withhold, from such credits or other personal property or other things of value, the amount of any tax, interest, or penalties due from the taxpayer . . . and to transmit the amount withheld to the Franchise Tax Board at such times as it may designate. . . ." Cal. Rev. & Tax. Code Ann. § 18817 (West 1983).

[2] See Cal. Rev. & Tax. Code Ann. § 18818 (West 1983) ("Any employer or person failing to withhold the amount due from any taxpayer and to transmit the same to the Franchise Tax Board after service of a notice pursuant to Section 18817 is liable for such amounts").

[3] Section 1339 vests in district courts jurisdiction over any action arising under an Act of Congress relating to the Postal Service. Section 409(a) provides:

"Except as provided in section 3628 of this title, the United States district courts shall have original but not exclusive jurisdiction over all actions brought by or against the Postal Service. Any action brought in a State court to which the Postal Service is a party may be removed to the appropriate United States district court . . . ."

delinquent liabilities.[4]   The Court of Appeals affirmed, agreeing that 5 U. S. C. § 5517 excused the Service from complying with the orders.   *Employment Development Department* v. *United States Postal Service*, 698 F. 2d 1029 (CA9 1983).[5]   The Court of Appeals rejected the Board's argument that § 5517 did not prohibit issuance of the orders, and also rejected the argument that the provision in 39 U. S. C. § 401(1) declaring that the Postal Service may "sue and be sued in its official name" had waived any sovereign immunity that the Service might possess.[6]   This appeal followed.[7]

In this Court, the Postal Service does not argue that 5 U. S. C. § 5517 and the agreement pursuant thereto between the United States and California prohibit the issuance of an order to withhold against the Postal Service with respect to delinquent tax liabilities of its employees.[8]   To the contrary,

---

[4] In the alternative, the District Court held that the state statute obligating employers to honor orders to withhold did not apply to the Postal Service.

[5] However, the Court of Appeals disagreed with the District Court's construction of the state statute, concluding that it did authorize issuance of the orders to withhold to the Postal Service.

[6] Judge Schroeder dissented, arguing that § 401(1) constituted a waiver of the Postal Service's immunity from process, including the type of process embodied in the orders to withhold.

[7] While the Court of Appeals did not say in so many words that §§ 18817 and 18818 could not constitutionally be applied to the Postal Service, it did expressly hold that the state statute required the Postal Service to honor the orders to withhold.   Therefore, a necessary predicate to the Court of Appeals' holding is that enforcement of the state statute would be inconsistent with federal law and hence invalid under the Supremacy Clause of the Constitution.   See *California* v. *Grace Brethren Church*, 457 U. S. 393, 405–407 (1982); *United States* v. *Clark*, 445 U. S. 23, 26, n. 2 (1980). Accordingly, we have jurisdiction over this appeal under 28 U. S. C. § 1254(2).   See *City of Detroit* v. *Murray Corp.*, 355 U. S. 489 (1958).

[8] As the text of § 5517 makes clear, it simply authorizes withholding agreements that otherwise the United States might be without statutory authority to enter, and limits the waiver of sovereign immunity with respect to these agreements.   It does not concern the scope of the Postal Service's amenability to process under 39 U. S. C. § 401(1):

the Postal Service expressly concedes that it is amenable to judicial process and could be required to honor a garnishment order requiring it to withhold the salary of a federal employee in order to satisfy a delinquent tax liability if issued by a state court.[9] Instead, the Postal Service contends that although it must obey a judicial order, it retains sovereign immunity with respect to state administrative tax levies. It argues that while the provision that the Postal Service can "sue and be sued in its official name" waives immunity from suit, it does not apply to administrative proceedings.

## II

The Board does not dispute the proposition that, unless waived, sovereign immunity prevents the creditor of a fed-

---

"(a) When a State statute—

"(1) provides for the collection of a tax either by imposing on employers generally the duty of withholding sums from the pay of employees and making returns of the sums to the State, or by granting to employers generally the authority to withhold sums from the pay of employees if any employee voluntarily elects to have such sums withheld; and

"(2) imposes the duty or grants the authority to withhold generally with respect to the pay of employees who are residents of the State;

the Secretary of the Treasury, under regulations prescribed by the President, shall enter into an agreement with the State within 120 days of a request for agreement from the proper State official. The agreement shall provide that the head of each agency of the United States shall comply with the requirements of the State withholding statute in the case of employees of the agency who are subject to the tax and whose regular place of Federal employment is within the State with which the agreement is made. . . .

"(b) This section does not give the consent of the United States to the application of a statute which imposes more burdensome requirements on the United States than on other employers, or which subjects the United States or its employees to a penalty or liability because of this section. An agency of the United States may not accept pay from a State for services performed in withholding State income taxes from the pay of the employees of the agency."

[9] See Brief for Appellee 13–15. In fact, the Postal Service's regulations provide for withholding of employees' wages when garnished by court order, United States Postal Service, Financial Management Manual § 431.1(g) (1978); see 39 CFR § 211.2(a)(2) (1983).

eral employee from collecting a debt through a judicial order requiring the United States to garnishee the employee's salary. See *Buchanan* v. *Alexander*, 4 How. 20 (1845). Rather, it places its primary reliance on 39 U. S. C. § 401(1), which indicates that the Postal Service may "sue and be sued." Thus the question in this case is whether this statutory waiver of sovereign immunity extends to the Board's orders to withhold.

This Court construed a statute providing that an agency created by Congress—the Federal Housing Authority—was empowered "to sue and be sued," in *FHA* v. *Burr*, 309 U. S. 242 (1940). In *Burr* the question presented was whether the agency had to honor a garnishment order issued by a state court. The Court began by observing: "Since consent to 'sue and be sued' has been given by Congress, the problem here merely involves a determination of whether or not garnishment comes within the scope of that authorization." *Id.*, at 244. It continued:

> "[W]e start from the premise that such waivers by Congress of governmental immunity in case of such federal instrumentalities should be liberally construed. This policy is in line with the current disfavor of the doctrine of governmental immunity from suit, as evidenced by the increasing tendency of Congress to waive the immunity where federal governmental corporations are concerned. . . . Hence, when Congress establishes such an agency, authorizes it to engage in commercial and business transactions with the public, and permits it to 'sue and be sued,' it cannot be lightly assumed that restrictions on that authority are to be implied. Rather if the general authority to 'sue and be sued' is to be delimited by implied exceptions, it must be clearly shown that certain types of suits are not consistent with the statutory or constitutional scheme, that an implied restriction of the general authority is necessary to avoid grave interference with the performance of a governmental function, or that for other reasons it was plainly the purpose of

Congress to use the 'sue and be sued' clause in a narrow sense. In the absence of such showing, it must be presumed that when Congress launched a governmental agency into the commercial world and endowed it with authority to 'sue or be sued,' that agency is not less amenable to judicial process than a private enterprise under like circumstances would be." *Id.*, at 245 (footnote omitted).[10]

The Court then explained why garnishment orders fell within the scope of the statutory waiver of sovereign immunity:

"Clearly the words 'sue and be sued' in their normal connotation embrace all civil process incident to the commencement or continuance of legal proceedings. Garnishment and attachment commonly are part and parcel of the process, provided by statute, for the collection of debt. . . . [H]owever it may be denominated, whether legal or equitable, and whenever it may be available, whether prior to or after final judgment, garnishment is

---

[10] Accord, *Reconstruction Finance Corp.* v. *J. G. Menihan Corp.*, 312 U. S. 81, 84–85 (1941); *United States* v. *Shaw*, 309 U. S. 495, 501 (1940). See also *Petty* v. *Tennessee-Missouri Bridge Comm'n*, 359 U. S. 275, 280–281 (1959); *Brady* v. *Roosevelt S.S. Co.*, 317 U. S. 575, 580 (1943). See generally *National City Bank of New York* v. *Republic of China*, 348 U. S. 356, 359 (1955) ("[E]ven the immunity enjoyed by the United States as territorial sovereign is a legal doctrine which has not been favored by the test of time. It has increasingly been found to be in conflict with the growing subjection of governmental action to the moral judgment"). Justice Frankfurter, writing for a unanimous Court in the Term prior to *Burr*, foreshadowed *Burr*'s approach to waivers of sovereign immunity:

"Congress has provided for not less than forty of such corporations discharging governmental functions, and without exception the authority to sue-and-be-sued was included. Such a firm practice is partly an indication of the present climate of opinion which has brought governmental immunity from suit into disfavor, partly it reveals a definite attitude on the part of Congress which should be given hospitable scope." *Keifer & Keifer* v. *Reconstruction Finance Corp.*, 306 U. S. 381, 390–391 (1939) (footnotes omitted).

a well-known remedy available to suitors. To say that Congress did not intend to include such civil process in the words 'sue and be sued' would in general deprive suits of some of their efficacy." *Id.*, at 245–246 (footnotes and citation omitted).

If anything, the waiver of sovereign immunity is broader here than it was in *Burr.* In passing the Postal Reorganization Act of 1970, 84 Stat. 719, Congress not only indicated that the Postal Service could "sue and be sued," 39 U. S. C. § 401(1), but also that it had the power "to settle and compromise claims by or against it," § 401(8), and that "[t]he provisions of chapter 171 and all other provisions of title 28 relating to tort claims shall apply to tort claims arising out of activities of the Postal Service." § 409(c).[11] Neither of these provisions would have been necessary had Congress intended to preserve sovereign immunity with respect to the Postal Service.[12] Congress also indicated that it wished the

---

[11] Chapter 171 of Title 28 governs procedure under the Federal Tort Claims Act, 28 U. S. C. §§ 2671–2680.

[12] The nearly universal conclusion of the lower federal courts has been that the Postal Reorganization Act constitutes a waiver of sovereign immunity. See *Insurance Co. of North America* v. *United States Postal Service*, 675 F. 2d 756, 758 (CA5 1982); *Portmann* v. *United States*, 674 F. 2d 1155, 1168 (CA7 1982); *Associates Financial Services of America, Inc.* v. *Robinson*, 582 F. 2d 1 (CA5 1978) *(per curiam); Beneficial Finance Co. of New York, Inc.* v. *Dallas*, 571 F. 2d 125 (CA2 1978); *General Electric Credit Corp.* v. *Smith*, 565 F. 2d 291 (CA4 1977) *(per curiam); Goodman's Furniture Co.* v. *United States Postal Service*, 561 F. 2d 462 (CA3 1977); *May Department Stores Co.* v. *Williamson*, 549 F. 2d 1147 (CA8 1977); *Standard Oil Division* v. *Starks*, 528 F. 2d 201 (CA7 1975) *(per curiam); Kennedy Electric Co.* v. *United States Postal Service*, 508 F. 2d 954, 957 (CA10 1974); *Butz Engineering Corp.* v. *United States*, 204 Ct. Cl. 561, 566–567, 499 F. 2d 619, 621–622 (1974); *Milner* v. *Bolger*, 546 F. Supp. 375 (ED Cal. 1982); *Lutz* v. *United States Postal Service*, 538 F. Supp. 1129, 1132 (EDNY 1982); *Lincoln National Bank & Trust Co.* v. *Marotta*, 442 F. Supp. 49 (NDNY 1977); *Bank of Virginia* v. *Tompkins*, 434 F. Supp. 787 (ED Va. 1977); *United Virginia Bank/National* v. *Eaves*, 416 F. Supp. 518

Postal Service to be run more like a business than had its predecessor, the Post Office Department.[13]

Here, the Board has employed the same "well-known" remedy that was held to be within the scope of a sue-and-be-sued clause in *Burr*. Moreover, as was true of the agency involved in *Burr*, Congress has "launched [the Postal Service] into the commercial world"; hence under *Burr* not only must we liberally construe the sue-and-be-sued clause, but also we must presume that the Service's liability is the same as that of any other business. No showing has been made to overcome that presumption. Since an order to withhold cannot issue unless the Postal Service owes the employee wages, the Service is nothing but a stakeholder; the order to withhold has precisely the same effect on its ability to operate efficiently as it does on that of any other employer subject to the California statute. It creates no greater inconvenience than did the garnishment order that this Court held could issue against a federal agency in *Burr*.[14] Indeed, the Board's

---

(ED Va. 1976); *Iowa-Des Moines National Bank* v. *United States*, 414 F. Supp. 1393 (SD Iowa 1976); *Colonial Bank* v. *Broussard*, 403 F. Supp. 686 (ED La. 1975). But see *Nolan* v. *Woodruff*, 68 F. R. D. 660 (DC 1975); *Drs. Macht, Podore & Associates, Inc.* v. *Girton*, 392 F. Supp. 66 (SD Ohio 1975); *Lawhorn* v. *Lawhorn*, 351 F. Supp. 1399 (SD W. Va. 1972); *Detroit Window Cleaners Local 139 Insurance Fund* v. *Griffin*, 345 F. Supp. 1343 (ED Mich. 1972).

[13] See H. R. Rep. No. 91–1104, pp. 5, 11–12 (1970); 116 Cong. Rec. 19846 (1970) (remarks of Rep. Corbett); *id.*, at 20226 (remarks of Rep. Udall). Perhaps the clearest practical expression of this intent was Congress' decision to create a new postal rate structure designed to make the Postal Service self-supporting. See 39 U. S. C. § 3621; H. R. Rep. No. 91–1104, pp. 16–17 (1970). See also *National Assn. of Greeting Card Publishers* v. *United States Postal Service*, 462 U. S. 810, 813–814 (1983).

[14] In *Burr*, the Court rejected the argument that the burden of responding to garnishment actions would interfere with its ability to perform its functions. See 309 U. S., at 249. Moreover, the burden upon the Postal Service of responding to the Board's orders to withhold is no greater than the burden it would face if it had to comply with a similar order issued by a state court, which the Postal Service concedes would not be barred by sovereign immunity. It should be noted that the Postal Service cannot be

order to withhold contains the same direction as did the writ of garnishment served on the FHA in *Burr*.

The Postal Service attempts to distinguish *Burr* by observing that the waiver of sovereign immunity in § 401(1) is limited to cases in which it has been "sued," and then arguing that because the process that has issued here is that of an administrative agency rather than a court, the Service has not been "sued" within the meaning of § 401(1). This crabbed construction of the statute overlooks our admonition that waiver of sovereign immunity is accomplished not by "a ritualistic formula"; rather intent to waive immunity and the scope of such a waiver can only be ascertained by reference to underlying congressional policy. *Keifer & Keifer* v. *Reconstruction Finance Corp.*, 306 U. S. 381, 389 (1939).[15] In this

---

held liable for honoring the orders to withhold, see Cal. Tax. & Rev. Code Ann. § 18819 (West 1983).

[15] Accord, *Reconstruction Finance Corp.* v. *J. G. Menihan Corp.*, 312 U. S., at 84. See also *Federal Land Bank* v. *Priddy*, 295 U. S. 229 (1935) (in order to interpret waiver of sovereign in a practical manner, sue-and-be-sued clause construed to extend to permit prejudgment attachment). In *Keifer & Keifer*, the Court wrote:

"Therefore, the government does not become the conduit of its immunity in suits against its agents or instrumentalities merely because they do its work. For more than a hundred years corporations have been used as agencies for doing work of government. Congress may create them 'as appropriate means of executing the powers of government, as, for instance, . . . a railroad corporation for the purpose of promoting commerce among the States.' But this would not confer on such corporations legal immunity even if the conventional to-sue-and-be-sued clause were omitted. In the context of modern thought and practice regarding the use of corporate facilities, such a clause is not a ritualistic formula which alone can engender liability like unto indispensable words of early common law, such as 'warrantizio' or 'to A and his heirs,' for which there were no substitutes and without which desired legal consequences could not be wrought.

"Congress may, of course, endow a governmental corporation with the government's immunity. But always the question is: has it done so? This is our present problem. Has Congress endowed Regional with immunity in the circumstances which enveloped its creation? It is not a textual problem; for Congress has not expressed its will in words. Congress may

case, at the level of policy and practicality it is illogical to conclude that Congress would have differentiated between process issued by the Board and that of a court, for even if a court issued the orders to withhold, neither the Postal Service nor its employees would be in a materially different position.

The operation of California's tax collection process makes it clear that there is no meaningful difference between an order to withhold issued by the Board and a garnishment order issued by a court. Under state law an assessment that has been validly made against a taxpayer[16] operates to impose an absolute liability for the tax that may not be contested except in an action seeking refund of amounts already paid. Indeed state law is unequivocal in requiring employers to honor orders to withhold—no defense is permitted.[17] Thus, a Califor-

---

not even have had any consciousness of intention. The Congressional will must be divined, and by a process of interpretation which, in effect, is the ascertainment of policy immanent not merely in the single statute from which flow the rights and responsibilities of Regional, but in a series of statutes utilizing corporations for governmental purposes and drawing significance from dominant contemporaneous opinion regarding the immunity of government agencies from suit." 306 U. S., at 388–389 (citations omitted) (quoting *Luxton* v. *North River Bridge Co.*, 153 U. S. 525, 529 (1894)).

[16] California law requires that a taxpayer receive notice and opportunity for hearing prior to the assessment of a deficiency, both before the Board and then before the State Board of Equalization through an administrative appeal. See Cal. Rev. & Tax. Code Ann. §§ 18581–18602 (West 1983). No question is raised as to the constitutional sufficiency of the notice and opportunity for hearing that the four Postal Service employees received. See generally *Commissioner* v. *Shapiro*, 424 U. S. 614, 629–632, and n. 12 (1976).

[17] Cal. Rev. & Tax. Code Ann. § 18819 (West 1983) ("Any employer or person required to withhold and transmit any amount pursuant to this article shall comply with the requirement without resort to any legal or equitable action in a court of law or equity"); see *Kanarek* v. *Davidson*, 85 Cal. App. 3d 341, 346, 148 Cal. Rptr. 86, 89 (1978). California courts will not entertain a suit contesting the assessment of a tax until after the taxpayer has exhausted his administrative refund remedy. See *Aronoff* v. *Franchise Tax Board*, 60 Cal. 2d 177, 180–181, 383 P. 2d 409, 411 (1963). Moreover, California law prohibits the issuance of an injunction restraining the

nia tax assessment, like a federal tax assessment, operates in a way that is functionally indistinguishable from the judgment of a court of law; it creates an absolute legal obligation to make payment by a date certain:

> "Once the tax is assessed the taxpayer will owe the sovereign the amount when the date fixed by law for payment arrives. Default in meeting the obligations calls for some procedure whereby payment can be enforced. The statute might remit the Government to an action at law wherein the taxpayer could offer such defense as he had. A judgment against him might be collected by the levy of an execution. But taxes are the life-blood of government, and their prompt and certain availability an imperious need. Time out of mind, therefore, the sovereign has resorted to more drastic means of collection. The assessment is given the force of a judgment, and if the amount assessed is not paid when due, administrative officials may seize the debtor's property to satisfy the debt." *Bull* v. *United States*, 295 U. S. 247, 259–260 (1935).[18]

Thus, in operation and effect the Board's orders to withhold are identical to the judgment of a court. They give rise to a binding legal obligation to pay the assessed amounts; the taxpayer may no more dispute this liability than the liability under any other judgment. Neither the Postal Service nor its employees would obtain any additional protections from a requirement that such orders be issued by a court, since the liability cannot be contested until after the tax has been paid

---

assessment or collection of any tax, Cal. Const., Art. XIII, § 32; Cal. Rev. & Tax. Code § 19081 (West 1983); see *California* v. *Grace Brethren Church*, 457 U. S., at 400–401, n. 10, 415.

[18] See *G. M. Leasing Corp.* v. *United States*, 429 U. S. 338, 352, n. 18 (1977); *Palmer* v. *McMahon*, 133 U. S. 660, 669 (1890); *Hager* v. *Reclamation District No. 108*, 111 U. S. 701, 710 (1884). See also *Randall* v. *Franchise Tax Board*, 453 F. 2d 381 (CA9 1971); *Greene* v. *Franchise Tax Board*, 27 Cal. App. 3d 38, 44, 103 Cal. Rptr. 483, 486–487 (1972).

and a refund action brought.[19]   At the same time, construing the statute to require the issuance of judicial process before the Postal Service need honor an order to withhold would create unwarranted disruption of the State's machinery for collection of delinquent taxes,[20] while simultaneously depriving the orders of "some of their efficacy"—a result inconsistent with *Burr*.

There is thus no reason to believe that Congress intended to impose a meaningless procedural requirement that an order to withhold be issued by a court.   To distinguish between administrative and judicial process would be to take an approach to sovereign immunity that this Court rejected more than 40 years ago—"to impute to Congress a desire for incoherence in a body of affiliated enactments and for drastic legal differentiation where policy justifies none."   *Keifer & Keifer*, 306 U. S., at 394.[21]   In cases of this kind, we believe

---

[19] The Postal Service argues that there is a significant distinction between administrative and judicial garnishment because it can remove the latter proceeding, unlike the former, to federal court under 39 U. S. C. § 409(a).   However, as an initial matter it is far from clear that the Postal Service may remove a garnishment action when it is merely a stakeholder and the real party in interest is the employee.   See *Jones Store Co.* v. *Hammons*, 424 F. Supp. 494 (WD Mo. 1977); *Armstrong Cover Co.* v. *Whitfield*, 418 F. Supp. 972 (ND Ga. 1976).   See also *Murray* v. *Murray*, 621 F. 2d 103 (CA5 1980).   Even assuming that such a case is removable, the facts of this case demonstrate the fallacy in the Postal Service's argument.   If the Service feels it has a meritorious defense to the order to withhold, though it is hard to see how it could, see *supra*, at 522–523, it remains free to refuse to honor the order to withhold and force the Board to file suit against it, as it did here, or else it can initiate its own lawsuit against the Board under § 409(a).

[20] See generally *California* v. *Grace Brethren Church*, 457 U. S., at 410–411; *Fair Assessment in Real Estate Assn., Inc.* v. *McNary*, 454 U. S. 100 (1981); *Rosewell* v. *LaSalle National Bank*, 450 U. S. 503, 522 (1981); *Great Lakes Co.* v. *Huffman*, 319 U. S. 293, 298 (1943).

[21] In *Keifer & Keifer*, the Court held that a Regional Agricultural Credit Corporation, a Government corporation, was not protected by sovereign immunity even though its authorizing legislation contained no sue-and-be-sued clause; since its parent corporation and a wide variety of similarly sit-

Congress intended the Postal Service to be treated similarly to other self-sustaining commercial ventures. Accordingly, we hold that when administrative process of the type employed by the Board issues against the Postal Service, it has been "sued" within the meaning of § 401(1), and must respond to that process.[22]

The judgment of the Court of Appeals is reversed, and the case is remanded to that court for further proceedings consistent with this opinion.

*It is so ordered.*

---

uated entities did not have immunity, the Court concluded that Congress could not have intended a different result with respect to the regional corporation. See 306 U. S., at 392–394. See also *Federal Land Bank* v. *Priddy*, 295 U. S., at 235–236.

[22] The Postal Service argues that Congress must have intended the Board to employ the "piggyback" provisions for collecting delinquent state tax liabilities found in 26 U. S. C. §§ 6361–6365, since they were passed to address this problem. However, nothing in that statute, which permits States to use the summary collection procedures of the Internal Revenue Service, limits the power of States to use any other available procedure. The Postal Service also argues that when Congress enacted 5 U. S. C. § 5520 in 1974, providing for the United States to enter withholding agreements for city and county income taxes, it must have assumed that the Service retained its sovereign immunity. Section 5520 is, however, no more relevant to this case than § 5517; both provide the Secretary of the Treasury with explicit authority to enter into withholding agreements which he might not otherwise be able to make; neither addresses the scope of the Service's sovereign immunity. See n. 8, *supra*. Moreover, the Postal Service's position that Congress intended use of only §§ 5517, 5520, and the piggyback provisions of the Internal Revenue Code to collect state taxes is inconsistent with the Service's position that it has no immunity from a judicial garnishment order. In light of our disposition, we need not reach the Board's contention that the Buck Act, 4 U. S. C. §§ 105–110, requires the Postal Service to honor the orders to withhold.