**Samuel PEREZ, Etc.,
Plaintiff-Appellant,**

**Martha Beatriz Sanchez
Perez, Appellant,**

v.

**The UNITED STATES of America,
Defendant-Appellee.**

**No. 86–1487
Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Oct. 21, 1987.

---

* Subsequent to the issuance of the panel's opinion, Judge Gee has determined to recuse himself. Judge Sam D. Johnson has been designated on this panel in place of Judge Gee for consideration of the petition for rehearing.

Mike Milligan, El Paso, Tex., for Martha Beatriz Sanchez Perez & Samuel Perez.

Mark M. Greenberg, Asst. U.S. Atty., Helen M. Eversberg, U.S. Atty., El Paso, Tex., for defendant-appellee.

Before GEE, RUBIN, and HILL*, Circuit Judges.

* Judge Hill concurred in the above opinion be-

ALVIN B. RUBIN, Circuit Judge:

A husband and wife injured in a motor vehicle accident appeal a district court judgment rendered pursuant to the Federal Tort Claims Act awarding them damages. They contend that the award should be increased because the district court erred in imputing the husband's negligence to his wife, in identifying the wife's past medical expenses as community property, in finding the husband 48 percent responsible for the accident, in awarding only $2,250.00 for the wife's future loss of earnings and no damages for the husband's loss of consortium, and in failing to award post-judgment interest. We affirm the district court judgment on the merits, but we hold that post-judgment interest should also have been allowed.

I.

On a rainy day, while traveling on a country road near El Paso, Texas, Samuel and Martha Perez and their minor daughter were involved in a motor vehicle accident. Perez was driving west with his family in a 1957 Ford pickup truck without a working speedometer or windshield wipers. A postal jeep was stopped at a mail box approximately ten feet off the road. The jeep started forward, also headed west, and began its reentry onto the roadway when the Perez truck was a distance described by witnesses as a few hundred feet away. Perez did not notice the jeep at first because he was arguing with Mrs. Perez. When Perez discovered the jeep ahead of him, he accelerated and attempted to pass it by steering into the other lane of traffic. Another vehicle, driven by Rodolfo Arrellano, was approaching in that lane. Perez tried to return to the right lane and slammed on his brakes, but was unable to avoid a collision with Arrellano. The postal jeep was not involved in the collision. As a result of the accident, Mrs. Perez sustained serious mental and physical injuries. Amber, the Perezes' child, suffered a fracture of her pelvis. Perez was not injured.

fore his death on October 19, 1987.

After a bench trial, the district court found that Perez was 48 percent responsible for the accident and Miguel Yglecias, the postal jeep driver, 52 percent responsible; that Mrs. Perez's damages amounted to $219,798.34 from medical expenses, loss of earnings, disability, and pain and suffering; that Perez sustained damages of $2,000 from the loss of his pickup truck; and that Amber Perez's damages were $17,435 from medical expenses, pain and suffering, and loss of maternal services. Taking into account Perez's contributory negligence, the court reduced the Perezes' recovery accordingly.

## II.

Under Texas law, which measures the liability of the federal government in this Federal Tort Claims Act suit,[1] an individual's contributory or comparative negligence bars recovery if it is 50 percent responsible for his injury, but if it is less than 50 percent responsible it merely diminishes his recovery.[2] The negligence in that event is also imputed to his spouse to reduce the damages recoverable as community property.[3] By imputing spousal negligence, the law seeks to prevent the negligent spouse from profiting as community owner by his own wrong.[4]

■ The Perezes contend that the government had not pleaded the defense of imputed negligence and that therefore the district court improperly imputed Perez's negligence to Mrs. Perez. Under Federal Rule of Civil Procedure 8(c), failure to raise an affirmative defense in a timely manner results in a waiver of that defense.[5] The government responds that, because imputation of Perez's negligence ineluctably followed from a finding of contributory negligence on his part and because his contributory negligence was affirmatively pleaded as a defense, Rule 8(c) was satisfied.

The central purpose of the Rule 8(c) requirement that affirmative defenses be pled is to prevent unfair surprise. "A defendant should not be permitted to 'lie behind a log' and ambush a plaintiff with an unexpected defense."[6] An affirmative defense pleaded in general terms suffices "as long as it gives [the] plaintiff fair notice of the nature of the defense."[7] Consequently, we have generally found a failure to plead an affirmative defense when lack of notice prevented the plaintiffs from advancing stronger arguments or introducing more supportive evidence in their behalf.[8]

As the record indicates, Perez's negligence was a central issue in the case. Both parties devoted substantial attention to that question; it was exhaustively considered and hotly disputed. Indeed, the Perezes do not suggest that they were deprived of a fair opportunity to litigate Perez's negligence or to introduce all of their evidence.

Once Perez's negligence was established, the only other issues that had to be decided before his negligence could be imputed to Mrs. Perez were whether the Perezes were married and to what extent Mrs. Perez's recovery constituted community property. The record shows that the Perezes were married when the district court entered its judgment, and the Perezes do not contend that the district court improperly relied on Graham v. Franco[9] in considering Mrs. Perez's recovery of medical expenses and loss of earnings to be community property.

---

1. *Lucas v. United States*, 807 F.2d 414, 417 (5th Cir.1986); 28 U.S.C. §§ 1346(b), 2674 (1982).

2. Texas Civ. Prac. and Rem. Ann. Code § 33.001 (Vernon 1986).

3. *Graham v. Franco*, 488 S.W.2d 390, 397 (Tex. 1972).

4. W. Keeton, D. Dobbs, R. Keeton & D. Owen, Prosser and Keeton on The Law of Torts § 74, at 531 (5th ed. 1984); *Graham*, 488 S.W.2d at 397.

5. *See, e.g., Ingraham v. United States*, 808 F.2d 1075, 1078–79 (5th Cir.1987).

6. *Id.* at 1079.

7. 5 C. Wright & A. Miller, Federal Practice and Procedure § 1274, at 323 (1969); *Barnwell & Hays, Inc. v. Sloan*, 564 F.2d 254, 255–56 (8th Cir.1977) (per curiam).

8. *Ingraham*, 808 F.2d at 1079.

9. 488 S.W.2d 390, 397 (Tex.1972).

In short, even had the government pleaded imputed contributory negligence in addition to contributory negligence, the Perezes would not have been able to present a more effective response.

■ The Perezes claim prejudice from the lack of notice on the ground that three months after the district court entered judgment a Texas court issued a final divorce decree treating medical bills as a separate rather than community debt. Thus, they say, the combined effect of the two proceedings was to let Perez enjoy a windfall at Mrs. Perez's expense: the federal district court reduced her recovery by $60,000 because of his negligence, then the Texas divorce decree left her to pay her entire medical bill despite these diminished resources. According to the Perezes, if they had had notice that contributory negligence might be imputed, they would have shown at trial that the Texas divorce decree would probably not make Perez share the cost of his wife's medical bills, so reducing her damage award because of his negligence would penalize the wrong party.

The Perezes' complaint lies with the Texas divorce court. When the district court entered its judgment, the Perezes were still married and he was indeed claiming damages as a result of loss of consortium with her. Mrs. Perez had ample time to amend her pleadings in the divorce action to ensure that her husband's responsibility for her medical expenses would be reflected in the property division of the divorce decree.

This case is unlike Roth v. Swanson,[10] in which the defendant sought imputation of a son's negligence to his parents. A general pleading of contributory negligence did not suffice because the question whether the son was the agent of his parents when the accident occurred was disputable even after a finding of negligence.[11] Similarly, in Knudson v. Boren,[12] a general pleading of contributory negligence did not include imputation of that negligence to a joint venturer,[13] presumably because the parties had to litigate whether a joint venture existed separately from the issue of contributory negligence.

■ Because the failure to specify *imputed* contributory negligence did not prejudice the Perezes in any way, it cannot serve as a ground for reversal.[14] Moreover, the district court did not err in imputing Perez's negligence to his wife without explicit urging by the government in its complaint or proposed conclusions of law. A trial court can sua sponte address a legal issue raised by neither party.[15]

### III.

The Perezes further contend that the district court clearly erred (1) in finding Perez 48 percent responsible for the accident; (2) in awarding Mrs. Perez only $2,250.00 for loss of future earning capacity; and (3) in awarding Perez no damages for loss of consortium or witness trauma.

Federal Rule of Civil Procedure 52(a) provides: "Findings of fact ... shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." The Supreme Court recently described the clearly-erroneous standard in *Anderson v. City of Bessemer City, North Carolina:*[16] a finding is clearly erroneous, even though there is evidence to support it, when, after considering all the evidence, the reviewing court "is left with the definite and firm conviction that a mistake has been committed."[17] If, on the other hand, there are two plausible views of the evidence, it would not be clearly

10. 145 F.2d 262 (8th Cir.1944).

11. *Id.* at 264, 269.

12. 261 F.2d 15 (10th Cir.1958).

13. *Id.* at 17, 19.

14. Fed.R.Civ.P. 61; *Trotter v. Jack Anderson Enters., Inc.,* 818 F.2d 431, 436 (5th Cir.1987).

15. *Brown v. Termplan, Inc.,* 693 F.2d 1047, 1049 (11th Cir.1983).

16. 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

17. *Id.* at 1511.

erroneous to choose either.[18] Moreover, findings that turn on the factfinder's assessment of witness credibility demand even greater deference.[19]

The district court found Perez negligent because he drove a truck without working windshield wipers in rainy weather and therefore did not have a clear view of the roadway; he traveled at a speed of approximately 40 miles per hour, which was excessive in view of the weather and road conditions; and he failed to devote his full attention to the driving of his vehicle. As the Perezes observe, the district court might have concluded from the deposition testimony of one witness, Rodolfo Arrellano, that Perez took evasive measures within normal reaction time after the jeep pulled onto the highway and that therefore the lack of working windshield wipers and lack of attention could not have been proximate causes of the accident. The district court, however, apparently chose to credit the testimony of the accident analyst called by the government, Michael Kinney, who concluded, after reviewing all the evidence, that Perez's reaction time included a significant perceptional delay.

The Perezes also challenge the district court's finding that Perez's speed was excessive. Again, however, that conclusion was supported by Kinney's testimony. The Perezes have not given us any reason to find Kinney's testimony implausible, nor have we found any such reason on review of the record. Consequently, the district court did not clearly err in finding Perez 48 percent responsible for the accident. It is evident that the district judge considered his negligence to be a major contributory cause of the accident but fixed its proportional contribution just short of the amount that would have barred his recovery completely.

The district court found that Mrs. Perez suffered serious injuries as a result of the accident, but further found that she had substantially recovered by the time of

trial and was able to work with no diminution of earning capacity. Mrs. Perez testified that she was working only part time when the accident occurred and that she planned to continue working on a part-time basis after her five-year-old daughter started to school. Her former employer testified that it would be hard for him to employ her in her prior position as a cashier and clerk because her physical condition would make it difficult for her to do the lifting and carrying involved. But the evidence before the court also included the reports of two psychologists, which stated that Mrs. Perez had suffered remarkably few residual deficiencies and that she should be able to return to her previous vocational activity. The district court had a first-hand opportunity to assess Mrs. Perez's mobility and general level of functioning, and it apparently chose to accept the psychologists' prognosis. We cannot say that it was clearly erroneous to award only $2,250.00 for loss of future earnings on these facts.

Texas recognizes a cause of action for loss of consortium,[20] and Perez introduced some evidence to support his claim. At the time of trial, he and his wife were separated and had filed for divorce. But there was also evidence to suggest that the couple had had prior marital difficulties followed by reconciliation. Mr. Perez's mother testified that her daughter-in-law had begun to talk more and more about wanting to go back to her husband, and that she had, in the past, gone through a period of being mad at her husband, then getting over it, then being mad again. Although the Perezes' separation continued and eventually led to divorce, it was not clear error for the district court to conclude, as it apparently did, that the evidence did not establish that the accident caused a loss of consortium so as to merit an award of damages.

Perez testified at trial that he was in shock at the sight of the accident, and his mother testified that he had nightmares

18. *Id.* at 1512.

19. *Id.*

20. *Sanchez v. Schindler*, 651 S.W.2d 249, 252 (Tex.1983).

afterwards. But the Perezes introduced no proof of any objective manifestation of any physical injury. When a party alleges injuries that are primarily subjective, and there is no directly observable objective evidence that an injury has occurred, the trier of fact is free to disregard the subjective evidence and award no damages.[21]

Buttressing our finding that these individual items of damage awards are not clearly erroneous is our conviction that the district court's verdict, taken as a whole, renders substantial justice to the parties involved. A different trier of fact might easily have evaluated the same evidence differently and awarded, for instance, less than $2,000, or even nothing at all in the absence of testimony of its value, for the destruction of a twenty-five-year-old pickup truck, and more than $2,250 for Mrs. Perez's loss of future earnings. But there is no mathematical formula for computing damages, and the result reached by the district court was, taken as a whole, "within the ambit that the law entrusts to the fact finder in determining damages."[22]

■ The Perezes contend that the district court erred in failing to award them post-judgment interest. Interest cannot ordinarily be recovered in a suit against the federal government.[23] But interest may be awarded when Congress has expressly consented to such an award.[24] As a general rule, this Congressional consent to an award of interest must be separate from a general waiver of immunity to suit.[25] Alternatively, however, interest may be awarded when the government has "cast off the cloak of sovereignty and assumed the status of a private commercial enterprise."[26] When a governmental agency is operating as a commercial enterprise, a general waiver of immunity may suffice to support an award of interest.[27]

Prior Supreme Court and Fifth Circuit decisions have recognized that the United States Postal Service is designed to be self-supporting and to operate very much like a commercial business.[28] Congress has waived sovereign immunity to allow actions against the Postal Service by providing in 39 U.S.C. § 401(1) that the Postal Service may "sue and be sued."[29] The Fourth,[30] Ninth,[31] and Eleventh Circuits[32] have all held that § 401(1) authorizes post-judgment interest in certain actions against the Postal Service. Nothing in the Federal Tort Claims Act restricts this waiver of immunity in any way relevant to the Perezes' case. While the FTCA contains an exemption from the waiver of sovereign immunity for claims arising out of negligent mail transmission,[33] this exception is inapplicable here because the Postal Service employee's negligence arose out of operation of a motor vehicle, not mail transmission as that term is used in the statute. We therefore hold that the Perezes are entitled to an award of post-judgment interest in accordance with 28 U.S.C. § 1961.

The Eighth Circuit has denied pre-judgment interest in a Title VII action against

---

**21.** *Szmalec v. Madro,* 650 S.W.2d 514, 517 (Tex. Ct.App.1983).

**22.** *Neal v. Saga Shipping Co.,* 407 F.2d 481, 489 (5th Cir.), *cert. denied,* 395 U.S. 986, 89 S.Ct. 2143, 23 L.Ed.2d 775 (1969).

**23.** *Library of Congress v. Shaw,* —— U.S. ——, 106 S.Ct. 2957, 2961–62, 92 L.Ed.2d 250 (1986).

**24.** *Id.* at ——, 106 S.Ct. at 2961.

**25.** *Id.* at ——, 106 S.Ct. at 2961–62.

**26.** *Id.* at ——, n. 5, 106 S.Ct. at 2963 n. 5; *see Standard Oil Co. v. United States,* 267 U.S. 76, 79, 45 S.Ct. 211, 212, 69 L.Ed. 519 (1925).

**27.** *See Standard Oil,* 267 U.S. at 79, 45 S.Ct. at 212; *R & R Farm Enters. v. Federal Crop Ins. Corp.,* 788 F.2d 1148, 1153 (5th Cir.1986).

**28.** *Franchise Tax Bd. v. United States Postal Serv.,* 467 U.S. 512, 519–20 & n. 13, 104 S.Ct. 2549, 2553–54 & n. 13, 81 L.Ed.2d 446 (1984); *A.L.T. Corp. v. Small Business Admin.,* 823 F.2d 126, 128 (5th Cir.1987).

**29.** *Franchise Tax Bd.,* 467 U.S. at 519, 104 S.Ct. at 2553; *R & R Farm Enters.,* 788 F.2d at 1152.

**30.** *White v. Bloomberg,* 501 F.2d 1379, 1385–86 (4th Cir.1974) (Back Pay Act action).

**31.** *Hall v. Bolger,* 768 F.2d 1148, 1151–52 (9th Cir.1985) (handicapped discrimination action).

**32.** *Nagy v. United States Postal Serv.,* 773 F.2d 1190 (11th Cir.1985) (Title VII action).

**33.** 28 U.S.C. § 2680(b) (1982).

the Postal Service.[34] We express no opinion concerning whether interest may be awarded in such cases.

For the reasons given, we affirm the district court judgment on the merits but modify the judgment to provide for an award of post-judgment interest.

---

**34.** *Loeffler v. Carlin,* 780 F.2d 1365, 1370–71 (8th    Cir.1985).