COMMONWEALTH OF PENNSYLVA-
NIA, DEPARTMENT OF ENVIRON-
MENTAL RESOURCES, Plaintiff,

v.

UNITED STATES POSTAL
SERVICE, Defendant.

No. 3: CV–91–1046.

United States District Court,
M.D. Pennsylvania.

Dec. 30, 1992.

David Wersan, Asst. Counsel, Central Region Litigation Pennsylvania Dept. of Environmental Resources, Harrisburg, PA, for plaintiff.

John Copeland Nagle, U.S. Dept. of Justice, Environment & Natural Resources Div., Environmental Defense Section, Washington, DC, Robert J. DeSousa, Asst. U.S. Atty., Chief, Civ. Div., Lewisburg, PA, for defendant.

## MEMORANDUM

McCLURE, District Judge.

BACKGROUND

This action was initiated with a complaint filed August 5, 1991 by the Commonwealth of Pennsylvania, Department of Environmental Resources ("DER") with the Pennsylvania Environmental Hearing Board ("EHB") seeking civil penalties from the United States Postal Service ("USPS" or "Postal Service") for alleged state statutory, regulatory and permit violations. The USPS removed the case from the EHB to this court.

The alleged violations occurred during construction of a new postal distribution facility near Harrisburg, Pennsylvania (the "site"). The USPS submitted an erosion and sedimentation control plan to DER for work to be performed at the site. DER

approved the plan and issued Earth Disturbance Permit Number 2289802 to the USPS on November 29, 1989. DER approved a revised plan for the site on June 25, 1990.

In this action, DER seeks to recover civil penalties for USPS' alleged non-compliance with permit requirements, the Pennsylvania Clean Streams Law ("CSL"), 35 Pa. Stat.Ann. §§ 691.1–691.1001, and state environmental regulations, 25 Pa.Code § 102.4. DER alleges that USPS discharged sediment into Paxton Creek and an unnamed tributary of that creek in violation of its state-issued permit. Work on the project has been completed. Both parties agree that there are no ongoing violations. The penalties which DER seeks are solely for past violations.

Two motions are before the court: 1) a motion (Record document No. 14) for partial summary judgment on the sovereign immunity issue filed by DER; and 2) a motion (Record Document No. 23) for judgment on the pleadings filed by USPS. Both parties agree that there are no material issues of fact with respect to the issues raised by the pending motions.[1]

The parties' motions raise a single legal issue: whether the USPS is amenable to suit by a state agency for civil penalties for past violations (non-coercive, as opposed to coercive fines) of state environmental law, or whether such actions are barred by sovereign immunity. DER contends that the sue-and-be-sued clause[2] in the Postal Reorganization Act of 1970, ("1970 Postal Act"), 39 U.S.C. §§ 101–5605, operates as a waiver of sovereign immunity from civil penalties.

■ This is an issue of first impression. No reported decision has considered whether the Postal Service's sue-and-be-sued clause, or that of any other federal instrumentality, operates as a waiver of sovereign immunity from state-imposed civil penalties. Supreme Court precedent makes it clear that the Service's sue-and-be-sued clause operates as a broad waiver of sovereign immunity upon which few restrictions can be implied absent some clear indication of congressional intent that the waiver be circumscribed. We find such an indication in Congress' inclusion of the Postal Service in the waiver provision of the federal Clean Water Act, which the Supreme Court has held does not operate as a waiver of sovereign immunity. The Postal Service is not, therefore, amenable to suit by DER for civil penalties. We will grant the USPS' motion for judgment on the pleadings. DER's motion for partial summary judgment will be denied.

## DISCUSSION

### Motion for judgment on the pleadings

■ Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings."[3] Judgment on the pleadings may be granted if " 'no set of facts could be adduced to support the plaintiff's claim for relief.' " *Institute for Scientific Info., Inc. v. Gordon and Breach, Science Publishers, Inc.*, 931 F.2d 1002, 1005 (3d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 302, 116 L.Ed.2d 245 (1991), quoting *Bryson v. Brand Insulations, Inc.*, 621 F.2d 556, 559 (3d Cir.1980). "Granting a Rule 12(c) motion results in a determination on the merits at an early stage in the litigation, and thus ... [the law] requires 'the movant [to] clearly establish [ ] that no material issue of fact remains to be resolved and that he is entitled

1. See: Defendant's brief, record document no. 25, p. 3 n. 1.

2. The clause provides that the Postal Service shall have the power "to sue and be sued in its official name". 39 U.S.C. § 401(1).

3. Rule 12(c) further provides:
   .... If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56. Fed.R.Civ.P. 12(c).
   We did not consider any matters outside the pleadings in ruling on defendant's motion, and therefore dispose of the motion under Rule 12(c).

to judgment as a matter of law.'" *Id.,* quoting *Jablonski v. Pan American World Airways, Inc.,* 863 F.2d 289, 290–91 (3d Cir.1988). In considering the motion, the court must view the facts presented in the pleadings in the light most favorable to the nonmoving party. *Id.,* at 1004.

### *Waiver of sovereign immunity*

■ As a federal entity, the Postal Service is immune from suit absent a waiver of sovereign immunity. The sue-and-be-sued clause in its charter, the 1970 Postal Act, unquestionably operates as such a waiver, which renders the Postal Service amenable to civil proceedings. *Loeffler v. Frank,* 486 U.S. 549, 554, 108 S.Ct. 1965, 1968–69, 100 L.Ed.2d 549 (1988). Less clear is whether that waiver extends to the imposition of civil penalties by a state regulatory agency.

■ Waivers of federal sovereign immunity are traditionally construed narrowly in favor of the sovereign. However, in the case of waivers conferred by a sue-and-be-sued clause, there is an exception to the traditional rule.[4] Consistent with established Supreme Court doctrine dating back to 1940, *Federal Housing Administration v. Burr,* 309 U.S. 242, 60 S.Ct. 488, 84 L.Ed. 724 (1940), such waivers are construed liberally. Restrictions should not be implied readily and exceptions are construed narrowly. Exceptions to the waiver should be found only if: 1) the claim asserted is inconsistent with a statutory or constitutional scheme; 2) an implied restriction is necessary to avoid "grave interference" with a governmental function; or 3) for other reason it was plainly Congress' intent that such actions not be permitted. *Burr; Loeffler, supra,* 486 U.S. at 554–55, 108 S.Ct. at 1969 and *Franchise Tax Board v.*

*USPS,* 467 U.S. 512, 517–18, 104 S.Ct. 2549, 2552–53, 81 L.Ed.2d 446 (1984).

### *Loeffler and Franchise Tax Board*

Two post–1970 Supreme Court decisions, *Loeffler, supra* and *Franchise Tax, supra,* have construed the Postal Service's waiver broadly, placing great emphasis on the Service's quasi-commercial status. The 1970 Act converted the Postal Service from a department of the United States government to "an independent establishment of the executive branch", 39 U.S.C. § 201. Stressing that it was Congress' intent to place the Postal Service on the same footing as private business, the Court viewed the sue-and-be-sued clause as "part of Congress' general design that the Postal Service 'be run more like a business than had its predecessor, the Post Office Department.'" *Franchise Tax, supra,* 467 U.S. at 521, 104 S.Ct. at 2554. By emphasizing the Service's independence, and by adopting a sue-and-be-sued clause as part of its charter, the Court held, Congress had "cast off the Service's 'cloak of sovereignty'". *Loeffler, supra,* 486 U.S. at 555, 108 S.Ct. at 1969.

The scope of the waiver is construed according to the "usual and ordinary sense" of the words used, absent some indication that Congress intended otherwise. So construed, the Court held, the clause renders the Postal Service amenable to "all civil process incident to the commencement or continuance of legal proceedings". *Loeffler, supra,* 486 U.S. at 565, 108 S.Ct. at 1974. Accord: *Franchise Tax Board, supra,* 467 U.S. at 519–20, 104 S.Ct. at 2553–54.

Unfortunately for us, neither case involved the imposition of a civil penalty, a

---

**4.** *United States v. Nordic Village,* —— U.S. ——, ——, 112 S.Ct. 1011, 1014–15, 117 L.Ed. 181, 188 (1992) tacitly resolved an apparent conflict in Supreme Court doctrine on the interpretation of waivers. There are two long standing rules of construction: 1) a rule of *narrow construction,* see, e.g., *McMahon v. United States,* 342 U.S. 25, 27, 72 S.Ct. 17, 19, 96 L.Ed. 26 (1951) and *Ruckelshaus v. Sierra Club,* 463 U.S. 680, 685, 103 S.Ct. 3274, 3277, 77 L.Ed.2d 938 (1983); and 2) a rule of broad construction, see, e.g., *United*

*States v. Yellow Cab Co.,* 340 U.S. 543, 547, 71 S.Ct. 399, 403, 95 L.Ed. 523 (1951) ("sweeping language" of the Federal Tort Claims Act broadly construed).

Nordic Village made it clear that the rule of broad construction applies to waivers based on a sue and be sued clause in federal agency/instrumentality enabling legislation, and that the rule of narrow construction applies to waivers based on other authority.

state-imposed fine or any remedy remotely akin to the relief sought here. *Franchise Tax* was an action by the California Franchise Tax Board to enforce a state-issued garnishment order directing the USPS to withhold delinquent state income taxes from the paychecks of postal employees. The Court held the garnishment order enforceable and no basis for overcoming the presumption of waiver. The Court found none of the *Burr* exceptions applicable. The garnishment order, the Court stated, would have the same effect on the Postal Service as on a private employer and there was no basis for a finding that it would impair a government function.

*Loeffler, supra,* was an action by a former USPS employee to recover prejudgment interest on a Title VII claim [5] asserted against the Postal Service. The court held such interest recoverable as a normal incident of suit and found, as it had in *Franchise Tax, supra,* no basis for application of any *Burr* exception. *Id.* at 557, 108 S.Ct. at 1970.

■ While it did not deal directly with the issue before this court, i.e. whether the Service is immune from civil penalties, the Supreme Court did make clear several salient points. The waiver of sovereign immunity effected by the sue-and-be-sued clause is construed liberally—consistent with Congress' intent to place the Postal Service on the same footing as private business—and according to its plain meaning. The waiver makes the Service amenable to all civil incidents of suit. Exceptions are not to be implied lightly.

As more particularly applied to the facts of this case, an exception to the waiver of sovereign immunity should be found to exist only if 1) subjecting the Service to the penalty is inconsistent with the Constitution, the Clean Water Act or the Postal Act; 2) an implied restriction on the waiver is necessary to avoid "grave interference

with a governmental function"; or 3) for other reasons it was plainly Congress' intent not to allow a state regulatory agency to collect civil penalties from a federal instrumentality such as the Postal Service. *Burr, supra. Accord: Loeffler, supra,* and *Franchise Tax Board, supra.*

*Interference with a government function*

■ Although the Constitution entrusts the delivery of mail to the federal government, (See U.S. Const. art. I, § 8, cl. 7.),[6] delivery of the mail is not the sole province of the federal government. Private carriers compete freely with the Postal Service for the public's business, and the only function which remains exclusive to the Postal Service is the delivery of what is defined as "letter mail." 18 U.S.C. §§ 1693–96.

■ There is nothing to indicate that the imposition of civil penalties will interfere in any manner whatsoever with that function, much less a suggestion that it would pose a "grave interference".

Nor will imposing civil penalties have any impact on the public treasury. The Postal Service is fiscally independent of the federal government. It receives no tax dollars. Its income is derived solely from postage fees, just like its competitors in the private sector. Judgments against the Postal Service are paid out of its funds. 39 U.S.C. § 409(e).[7]

*The 1970 Postal Act*

The 1970 Postal Act contains only two specific limitations on the waiver of immunity. One limits the Service's liability in tort claims by requiring that all such claims be brought under the Federal Tort Claims Act, 28 U.S.C. § 1346(b) ("FTCA"). 39 U.S.C. § 409(c). The other restricts the manner of bringing suit against the Service by requiring compliance with the procedural rules applicable to governmental entities. 39 U.S.C. § 409(b). See: *Mahoney v. Unit-*

**5.** The Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*

**6.** ("The Congress shall have Power ... To establish Post Offices)

**7.** Section 409 provides:

A judgment against the Government of the United States arising out of activities of the Postal Service shall be paid by the Postal Service out of any funds available to the Postal Service.

39 U.S.C. § 409(e).

*ed States Postal Service,* 884 F.2d 1194 (9th Cir.1989). Neither suggests any limitation on the Service's amenability to civil penalties.

The only other section of the 1970 Postal Act which affords a possible basis for inferring a limitation on the waiver is section 410, which lists federal laws with which the Service is required to comply and which, in some cases, take precedence over the Postal Act. CWA is not among the statutes listed.[8] Had Congress intended provisions imported from the CWA to restrict the scope of the Postal Act's waiver, it would most likely have expressly included it as a superseding statute. See, e.g., *City of Thousand Oaks v. United States,* 396 F.Supp. 1306 (D.C.Cal.1974) (USPS is exempt from the requirements of the National Environmental Policy Act, because it is not among the laws listed in section 410).

There is a strong resistance to implying limitations on the waiver not specifically mentioned in the Postal Act since it runs counter to expressed Congressional intent. Since Congress spelled out certain limitations, it would logically have expressly mentioned any others it intended to create and not left it to the courts to infer the existence of additional limitations. See generally: *Beneficial Finance Co. of New York v. Dallas,* 571 F.2d 125, 128 (2d Cir. 1978) ("[T]he breadth of the waiver embodied in the ... Postal Reorganization Act is further emphasized by the few, isolated

limitations on consent to suit which Congress specifically retained for the USPS.").

Thus, there is nothing directly stated in the Postal Act which limits the waiver to eliminate the possibility of recovering civil penalties against the Postal Service.

*Clean Water Act*

■ As stated above, DER is suing under the Pennsylvania CSL. CSL is the state counterpart to the federal Clean Water Act (CWA), 33 U.S.C. §§ 1251 *et seq.,* which prohibits the discharge or disposal of pollutants into navigable waters without a permit. Congress assigned primary enforcement authority of the CWA to the Environmental Protection Agency (EPA). However, the statute allows EPA to transfer regulatory authority to state officials if the state has a federally-sanctioned statutory scheme and permit program. 33 U.S.C. § 1342.[9] Pennsylvania has such a program and its basis in federal law allows it to rely on provisions of the CWA as well as state law.

■ The federal facilities provision of the CWA waives the sovereign immunity of federal agencies, departments and instrumentalities, rendering them amenable to enforcement actions for violations of the Act and of federally-sanctioned state environmental laws. 33 U.S.C. § 1323(a).[10]

That waiver has been specifically construed by the Supreme Court in a 1992

---

**8.** Section 410(a) provides:

Except as provided by subsection (b) of this section, and except as otherwise provided in this title or insofar as such laws remain in force as rules or regulations of the Postal Service, no Federal law dealing with public or Federal contracts, property, works, officers, employees, budgets, or funds, including the provisions of chapters 5 and 7 of title 5, shall apply to the exercise of the powers of the Postal Service.

39 U.S.C. § 410(a).

**9.** See generally: 33 U.S.C. § 1342(b) (requirements and procedures for EPA approval of state water-pollution permit plans) and 40 CFR §§ 123.1–123.64 (1991) (detailed requirements for state plans).

**10.** Section 1323(a) provides:

Each department, agency, or instrumentality of the ... Federal Government ... shall be subject to, and comply with, all Federal, State,

interstate, and local requirements, administrative authority, and process and sanctions respecting the control and abatement of water pollution in the same manner ... as any nongovernmental entity.... The preceding sentence shall apply (A) to any requirement whether substantive or procedural (including any record keeping or reporting requirement, any requirement respecting permits and any other requirement, whatsoever), (B) to the exercise of any Federal, State or local administrative authority, and (C) to any process and sanction, whether enforced in Federal, State, or local courts or in any other manner.... [T]he United States shall be liable only for those civil penalties arising under Federal law or imposed by a State or local court to enforce an order or the process of such court.

33 U.S.C. § 1323(a).

decision as not operating as a waiver of immunity from civil penalties. In a case materially identical to the case *sub judice* in every way except one, the entity sued, the Court held that the CWA did not waive federal immunity from state-imposed civil penalties for past environmental violations. *United States Department of Energy v. Ohio,* —— U.S. ——, 112 S.Ct. 1627, 118 L.Ed.2d 255 (1992) (*"D.O.E. v. Ohio"*)

Ohio sued the Department of Energy for civil penalties due to alleged environmental violations in connection with its operation of a nuclear power plant. Based on its analysis of the waiver conferred by section 1323(a), the Court held that such penalties were not recoverable and that it was not Congress' intent to waive federal immunity from their collection with passage of the CWA.

That holding limits the scope of the Postal Service's independently based sue-and-be-sued waiver only if it can reasonably be inferred that it was Congress' intent when enacting the CWA, to limit the scope of that waiver. The introductory language of section 1323(a) is sweeping—and embraces "[e]ach department, agency, or instrumentality of the executive, legislative, and judicial branches of the Federal Government". Although the CWA does not define what constitutes a federal "instrumentality" or list the entities that term is intended to cover, (See 33 U.S.C. § 1362), "instrumentality" is a general term which clearly encompasses the Postal Service as an "establishment of the executive branch of the Government of the United States," albeit an "independent" one. 39 U.S.C. § 201.

■ By thus grouping the Postal Service with other federal entities, Congress indicated an intent that the Postal Service be sued under the CWA only on the same basis as other federal entities. See generally: *Mahoney v. United States Postal Service, supra,* 884 F.2d at 1199–1200 (Statutory structure of Title VII, which groups the Postal Service with other governmental entities, construed as indicative of congressional intent to require postal employees to pursue the same administrative proceedings as other federal employ-

ees before filing an action in District Court) and *Carroll v. United States Postal Service,* 764 F.Supp. 143, 144 (E.D.Missouri 1991) (Contract Dispute Act interpreted as restoring "a measure of the USPS's immunity"—Court held that claims based on contract disputes with the Postal Service must be filed before the Claims Court, not the District Court, consistent with Congress' intent of establishing a comprehensive system for the resolution of government contract claims).

### Statutory construction

The Postal Act, with section 401(1) in its present form, was enacted by Congress in 1970. Two years later, Congress amended the Clean Water Act to waive the sovereign immunity of federal instrumentalities from compliance and enforcement of the CWA as well as state, interstate, and local requirements "respecting control and abatement of pollution" by adding the federal facilities provision, section 1323. Pub.Law No. 92–500, 86 Stat. 875 (Oct. 18, 1972). The introductory phrase of section 1323(a), which renders it applicable to "[e]ach department, agency, or instrumentality of the executive, legislative, and judicial branches of the Federal Government", has not been altered or amended by Congress since its initial enactment of the federal facilities provision (section 1323) in 1972. Although section 1323 was amended in 1977 to add paragraph (b), the introductory language of paragraph (a) was not altered. Pub.Law No. 95–217, 91 Stat. 1597 (Dec. 27, 1977).

Whether Congress intended the section 1323 waiver to supersede and supplant that effected by section 401(1) of the Postal Act is unclear. The Postal Service is not specifically mentioned in section 1323 of the CWA, nor is section 1323 specifically mentioned in section 410 of the Postal Act, as it then existed or as it has been subsequently amended to include recent statutes. The failure of either provision to recognize the existence of the other leaves Congress' intent as to which supersedes, i.e. which operates as the waiver of the Postal Services' immunity unclear.

■ If congressional intent cannot be discerned from the plain language of the statute, reference to legislative history is appropriate. The Legislative History of the 1977 amendment to the CWA, set forth in Senate Report No. 95–370, contains relevant comments on Congress' intent with respect to enforcement of the federal facilities provision. Regarding the federal facilities compliance provisions added (section 1323(b)), the Report states:

> This section clarifies section 313 to provide that all Federal facilities must comply with all substantive and procedural requirements of Federal, State, or local water pollution control laws. It also eliminates the exception for Federal agencies from the State certification of activities under section 401.
>
> . . . .
>
> The act has been amended to indicate unequivocally that all Federal facilities and activities are subject to all of the provisions of State and local pollution laws. Though this was the intent of the Congress in passing the 1972 Federal Water Pollution Control Act Amendments, the Supreme Court, encouraged by Federal agencies, has misconstrued the original intent.
>
> Since the substantive requirements of the act and of State and local law would be unenforceable unless procedural provisions were also met section 313 is amended to specify that, as in the case of air pollution, a Federal facility is subject to any Federal, State, and local requirement respecting the control or abatement of water pollution, both substantive and procedural, to the same extent as any person is subject to these requirements. This includes, but is not limited to, requirements to obtain operating and construction permits, reporting and monitoring requirements, any provisions for injunctive relief and such sanctions imposed by a court to enforce such relief, and the payment of reasonable service charges.... The intention of the 1972 act was not to exempt ... any ... public

agency from State water quality standards ...

*Id.*

If two statutes conflict, the more recent and the more specific congressional pronouncement prevails over a prior, more generalized statute. *Natural Resources Defense Council, Inc. v. United States Environmental Protection Agency*, 824 F.2d 1258, 1278 (1st Cir.1987). The federal facilities provisions of the CWA is the more recent, and the more specific statute. It was enacted for the specific purpose of subjecting federal instrumentalities to federal, state, and local environmental requirements. Section 401(1) of the Postal Act, by comparison, is a general statute, authorizing the postal service to "sue and be sued" in its own name, which has been construed by the courts as operating as a waiver of immunity. See: *United States v. Rodriguez–Rodriguez*, 863 F.2d 830 (11th Cir. 1989). Based on the foregoing, we find that it was Congress' intent that section 1323(a) govern liability of all federal entities. The contrary interpretation would subvert congressional intent to ensure uniform enforcement of environmental laws by requiring that all federal entities be held accountable on the same basis for failure to conform to pollution abatement laws.

SUMMARY

The Clear Water Act, by necessary implication, limits the sue-and-be-sued clause waiver of sovereign immunity of the Postal Act. Under the federal facilities provision of the CWA, 33 U.S.C. § 1323(a), the Postal Service is immune from civil penalties for past violations of the permit requirements of the Pennsylvania Clean Streams Law.

Accordingly, the court will grant USPS' motion for judgment on the pleadings and deny DER's motion for partial summary judgment.