STATE OF OHIO, Anthony J. Celebrezze, Jr., Attorney General, Plaintiffs–Appellees,

v.

U.S. DEPARTMENT OF ENERGY, Defendant–Appellant,

John S. Herrington, Secretary of Energy; NLO, Inc.; NL Industries, Inc., Defendants.

No. 89–3329.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 7, 1989.

Decided June 11, 1990.

Jack A. Van Kley (argued), Terrence S. Finn, Timothy J. Kern, Office of the Atty. Gen., Environmental Enforcement Section, Columbus, Ohio, for plaintiffs-appellees.

Roger J. Marzulla, Robert L. Klarquist, J. Steven Rogers, Jacques B. Gelin (argued), U.S. Dept. of Justice, Land & Natural Resources Div., Washington, D.C., for defendant-appellant.

Christopher T. Ellison, U.S. Dept. of Justice, Sacramento, Cal., for amicus curiae State of Cal.

Cynthia M. Vagelos, Boulder, Colo., for amicus curiae State of Colo.

Before MARTIN, JONES and GUY, Circuit Judges.

BOYCE F. MARTIN, Jr., Circuit Judge.

This interlocutory appeal requires us to determine whether the United States has waived its sovereign immunity for actions for civil damages under the Resource Conservation and Recovery Act, 42 U.S.C. § 6901 *et seq.*, and the Clean Water Act, 33 U.S.C. § 1251 *et seq.* We affirm the district court's decision that sovereign immunity was waived under both statutes.

The United States Department of Energy owns a 1,050 acre uranium processing plant in Fernald, Ohio that is operated under a management contract by private contractors. The Fernald facility processes uranium for the production of nuclear weapons. The Fernald facility does not have a nuclear reactor, but processes performed there generate both radioactive and non-radioactive hazardous wastes.

In March 1986, the State of Ohio filed this action against the Department of Energy, the Secretary of the Department of Energy, and its private contractors, seeking civil penalties and other relief. The State of Ohio alleges that the defendants improperly disposed of hazardous wastes, released radioactive materials into the environment, and polluted surface and ground water. The State of Ohio grounds its claims primarily in the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. § 9601 *et seq.*, the Resource Conservation and Recovery Act, 42 U.S.C. § 6901 *et seq.*, the Clean Water Act, 33 U.S.C. § 1251 *et seq.*, the Ohio Solid & Hazardous Waste Control Act, Ohio Rev.Code § 3734, and the Ohio Water Pollution Control Act, Ohio Rev. Code § 6111.

The Department of Energy moved to dismiss the claims for civil penalties as barred by sovereign immunity. The district court denied this motion, holding that sovereign immunity was waived under the Resource Conservation and Recovery Act and the Clean Water Act. The district court certified its decision for immediate appeal because the decision involves a controlling question of law and immediate appeal may advance the ultimate resolution of the litigation. 28 U.S.C. § 1292(b). We exercised our discretion to hear this interlocutory appeal on whether sovereign immunity was waived. *Id.*

A waiver of sovereign immunity must be clear, express, and unambiguous; it cannot be implied from vague language. *Block v. North Dakota,* 461 U.S. 273, 280, 103 S.Ct. 1811, 1816, 75 L.Ed.2d 840 (1983); *Hancock v. Train,* 426 U.S. 167, 187, 96 S.Ct. 2006, 2016, 48 L.Ed.2d 555 (1976) (applied to environmental law). In determining whether a waiver is clear, the controlling factor is the "underlying congressional policy." *Franchise Tax Bd. v. U.S. Postal*

*Service,* 467 U.S. 512, 521, 104 S.Ct. 2549, 2554, 81 L.Ed.2d 446 (1984). We must avoid the temptation to seek any hint of ambiguity that can be used to twist the statute into denying sovereign immunity. *See id.* When Congress enacts a clear waiver, that waiver should not be "thwarted by an unduly restrictive interpretation" in the courts. *Canadian Aviator v. United States,* 324 U.S. 215, 65 S.Ct. 639, 89 L.Ed. 901 (1945).

## I. *The Clean Water Act*

We first address whether Congress waived sovereign immunity in the Clean Water Act, 33 U.S.C. § 1323, for claims brought by the State of Ohio under the Clean Water Act and Ohio Water Pollution law. Section 1323 states:

(a) *Each department,* agency, or instrumentality of the executive, legislative, and judicial branches of the Federal Government (1) having jurisdiction over any property or facility, or (2) engaged in any activity resulting, or which may result, in the discharge or runoff of pollutants and each officer, agent, or employee thereof in the performance of his official duties, *shall be subject to, and comply with, all Federal, State, interstate, and local requirements,* administrative authority, and process *and sanctions* respecting the control and abatement of water pollution in the same manner, and *to the same extent as any nongovernmental entity* including the payment of reasonable service charges. The preceding sentence shall apply (A) to any requirement whether substantive or procedural (including any recordkeeping permits and any other requirement, whatsoever), (B) to the exercise of any Federal, State, or local administrative authority, and (C) *to any process and sanction, whether enforced in Federal, State, or local courts or in any other manner. This subsection shall apply notwithstanding any immunity of such agencies,* officers, agents, or employees under any law or rule of law.... No officer, agent, or employee of the United States shall be personally liable for any civil penalty arising from the performance of his official duties, for which he is not otherwise liable, and *the United States shall be liable only for those civil penalties arising under Federal law* or imposed by a State or local court to enforce an order or the process of such court....

33 U.S.C. § 1323 (emphasis added). This statutory language should be interpreted according to its ordinary usage. *See Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 199 n. 20, 96 S.Ct. 1375, 1384 n. 20, 47 L.Ed.2d 668 (1976). The first sentence of section 1323 subjects the Department of Energy to "any requirement," including "sanctions," to the same extent as a private entity under the Act. Subsection C specifically states that sovereign immunity is waived for *any* sanction. Any reader would interpret this statement to subject the Department of Energy to civil penalties. In addition, the Oxford English Dictionary defines "sanction" as "[t]he *specific penalty* enacted in order to enforce obedience to the law." The Compact Edition of the Oxford English Dictionary 2633 (1971) (emphasis added). *See Hochfelder,* 425 U.S., at 199 n. 20, 96 S.Ct. at 1384 n. 20 (a dictionary may show ordinary usage). According to its ordinary usage, the language of the waiver of sovereign immunity in section 1323 clearly includes civil penalties.

Congress's 1977 amendment to the Clean Water Act further evidences its intent to waive federal sovereign immunity to civil penalties. Section 1323 was amended in the aftermath of *EPA v. Cal. ex rel. State Water Resources Control Bd.,* 426 U.S. 200, 96 S.Ct. 2022, 48 L.Ed.2d 578 (1976), in which the Court interpreted an earlier version of section 1323. That earlier version of section 1323 subjected federal agencies to "Federal, State, interstate, and local requirements ... to the same extent as any person is subject to such requirements." 33 U.S.C. § 1323 (1970). The Court distinguished between substantive and procedural requirements and held that Congress had not waived sovereign immunity for procedural requirements, including all en-

forcement mechanisms.[1] The Court held that section 1323 merely subjected federal facilities to the substantive pollution limits in state laws. Following that decision, Congress amended the Clean Water Act, stating that federal facilities were subject to "all" requirements, including "process and sanctions." The amendment clearly subjects federal agencies to civil penalties. The fact that the amendment was provoked by a Supreme Court decision protecting sovereign immunity underscores Congress's determination to waive sovereign immunity for civil penalties.

If Congress's amendment of the Clean Water Act did not waive sovereign immunity for civil penalties, it would be impossible to give meaning to each part of section 1323. The Supreme Court has stated, "It is axiomatic that all parts of an Act 'if at all possible, are to be given effect.'" *F.A.A. Administrator v. Robertson*, 422 U.S. 255, 261, 95 S.Ct. 2140, 2145, 45 L.Ed.2d 164 (1975), *quoting Weinberger v. Hynson, Wescott & Dunning*, 412 U.S. 609, 633, 93 S.Ct. 2469, 2485, 37 L.Ed.2d 207 (1973) (citations omitted). Section 1323 explicitly limits its waiver of sovereign immunity for civil penalties to those "arising under federal law." This limit would become superfluous if section 1323 were interpreted as not waiving sovereign immunity for civil penalties at all.

■ In order for the claims brought by the State of Ohio to fall within the waiver of sovereign immunity, those claims must arise under federal law. *See* 33 U.S.C. § 1323. Claims brought under the Clean Water Act itself, such as the claims under 33 U.S.C. § 1365, clearly arise under federal law.

The claims brought under the Ohio water pollution laws also arise under federal law because of the legislative scheme of the Clean Water Act. *See* Ohio Rev.Code § 6111.09. The Clean Water Act mandates that the states may create their own water pollution laws, which may qualify to *re-*

*place* the requirements of the Clean Water Act. 33 U.S.C. § 1342(b). Upon implementing a state permit program "in accordance with" 33 U.S.C. § 1342, the state assumes responsibility for pollution permits on behalf of and instead of the Environmental Protection Agency. 33 U.S.C. § 1342(c). The Environmental Protection Agency is charged with promulgating the standards that state programs must meet to obtain approval. 33 U.S.C. § 1342; *see* 40 C.F.R. § 123 (regulations setting forth the requirements for state programs to be approved). In order to be approved, a state law must provide for civil penalties. 33 U.S.C. § 1342(b)(7); 40 C.F.R. § 123.27(a)(3). Once a state water pollution law is approved, compliance with the state law *is* compliance with the Clean Water Act. 33 U.S.C. § 1342(k). Thus, under the terms of the Clean Water Act, a qualifying state water pollution law, including its civil penalties, arises under federal law.

Other sections of the Clean Water Act emphasize Congress's intent that claims under state pollution laws may arise under federal law. The introductory section of the Clean Water Act states, "It is the policy of Congress that the States ... implement the policy programs *under* sections 402 and 404 of this Act." 33 U.S.C. § 1251(b) (emphasis added). Congress continually uses language such as "permit issued *under* Section 402 of this Act ... by a State." 33 U.S.C. § 1319(a) (emphasis added); *see* 33 U.S.C. §§ 1319(c), 1319(d), 1311(i). Further, the Clean Water Act empowers the Environmental Protection Agency to enforce state permits as federal requirements. 33 U.S.C. § 1319(a). Thus, practically speaking, actions under a qualifying state water pollution law arise under federal law.

The Ohio water pollution law, codified at Ohio Rev.Code § 6111, arises under federal law because it is an approved state water pollution law. It is uncontroverted that the

---

1. Although *State Water Resources Control Bd.* and its companion case, *Hancock v. Train*, 426 U.S. 167, 96 S.Ct. 2006, 48 L.Ed.2d 555 (1976), concerned injunctive relief, the Court discussed the issues in terms of enforcement mechanisms.

The Court did not distinguish between injunctive relief and civil penalties or damages because it viewed both as procedural requirements, not covered by its interpretation of the pollution acts.

Ohio Water Pollution Act meets the requirements of the Clean Water Act. Indeed, as authorized by Congress, the Environmental Protection Agency has suspended its issuance of permits in Ohio in favor of the state's issuance of permits under the Ohio Water Pollution Act pursuant to 33 U.S.C. § 1342(c)(1). The Ohio Act specifically requires the Director of the Ohio Environmental Protection Agency to manage the Ohio pollution permit program in compliance with the Clean Water Act. The Ohio Act also bars the Director from issuing a permit to which the federal Environmental Protection Agency objects. Ohio Rev.Code § 6111.03(J)(3). The limitation of the waiver of sovereign immunity to civil penalties arising under federal law is aimed at state water pollution laws that fail to meet approval under the Clean Water Act; it is not aimed at approved laws such as Ohio Rev.Code § 6111.

Congress clearly has waived sovereign immunity for civil penalties of federal agencies that violate the Clean Water Act and the Ohio Water Pollution Act. Thus, we need not consider the State of Ohio's alternative argument that the citizen suit provision of the Clean Water Act, 33 U.S.C. § 1365, authorizes civil penalties against federal facilities.

## II. *The Resource Conservation and Recovery Act*

The Department of Energy also appeals the district court's determination that the general waiver provision of the Resource Conservation and Recovery Act, 42 U.S.C. § 6961, waives sovereign immunity in regard to civil penalties. The State of Ohio responds that the district court correctly decided this question and, in the alternative, contends that sovereign immunity has been waived under the citizen suit provision of the Resource Conservation and Recovery Act, 42 U.S.C. § 6972. We hold that Congress did not waive sovereign immunity for civil penalties under the general waiver, but that Congress did waive sovereign immunity for civil penalties under the citizen suit provision.

### A. *General Waiver*

▇ Congress has at least waived the immunity of the United States in 42 U.S.C. § 6961, which states:

Each department, agency, and instrumentality of the executive, legislative, and judicial branches of the Federal Government (1) having jurisdiction over any solid waste management facility or disposal site, or (2) engaged in any activity resulting, or which may result, in the disposal or management of solid waste or hazardous waste *shall be subject to, and comply with, all Federal, State, interstate, and local requirements, both substantive and procedural (including any requirement for permits or reporting or any provisions for injunctive relief and such sanctions as may be imposed by a court to enforce such relief)*, respecting control and abatement of solid waste or hazardous waste disposal in the same manner, and to the same extent, as any person is subject to such requirements, including the payment of reasonable service charges. *Neither the United States, nor any agent, employee, or officer thereof, shall be immune or exempt from any process or sanction of any State or Federal Court, with respect to the enforcement of any such injunctive relief.*

42 U.S.C. § 6961 (emphasis added). This section renders the federal government subject to the "requirements" of federal, state and local laws. The issue is whether "requirements" includes civil penalties in an action brought by a state. Despite indications that Congress intended to waive sovereign immunity for civil penalties here, we find that any such waiver is not stated clearly enough to be recognized. *See Block v. North Dakota*, 461 U.S. 273, 280, 103 S.Ct. 1811, 1816, 75 L.Ed.2d 840 (1983).

An ordinary reading of the phrase, "all ... requirements," indicates that a civil penalty is a "requirement" because a party violating the statute will be required to pay the penalty. Circumstances surrounding the passage of the Resource Conservation and Recovery Act also support a finding that "requirements" include civil penalties.

Congress enacted the Resource Conservation and Recovery Act a few months after the Supreme Court decisions in *Hancock v. Train*, 426 U.S. 167, 96 S.Ct. 2006, 48 L.Ed.2d 555 (1976), and *EPA v. Cal. ex rel. State Water Resources Control Bd.*, 426 U.S. 200, 96 S.Ct. 2022, 48 L.Ed.2d 578 (1976). These decisions held that Congress did not waive sovereign immunity for procedural requirements, including enforcement mechanisms, in its previously enacted environmental statutes. The Court explicitly based its holding on the fact that the statutory waivers said "requirements" rather than "all requirements." *Hancock*, 426 U.S. at 182, 96 S.Ct. at 2014; *State Water Resources Control Bd.*, 426 U.S. at 214, 96 S.Ct. at 2029 (stating that its reasoning in *Hancock* controls sovereign immunity questions arising under the Clean Water Act as well). In the Resource Conservation and Recovery Act, Congress used the specific language, "all requirements," that the Court reasoned to be adequate to subject the federal government to enforcement mechanisms of state statutes. Thus, Congress *may* have intended to waive sovereign immunity for civil penalties.

Despite these considerations, we decline to find a waiver of immunity for civil penalties under section 6961 because of two complications. The first complication is the difference between the language in section 6961 and the waiver provision in the Clean Water Act, 33 U.S.C. § 1323. The Clean Water Act provides that federal facilities are subject to both "all requirements" and "sanctions" of federal and state law. 33 U.S.C. § 1321. If "all requirements" includes sanctions, then the discussion of sanctions would be superfluous. In addition, the waiver provision in the Clean Water Act expressly limits the waiver of sovereign immunity to "those civil penalties arising under Federal law." *Id.* As we have already noted, this limit protects the United States from civil penalties under the state water pollution laws that do not have federal approval. Like the Clean Water Act, the Resource Conservation and Recovery Act is an umbrella act for state pollution laws, but, unlike the Clean Water Act, it lacks language to protect the United

States from suits under unapproved state laws. Although Congress may have intended to waive sovereign immunity in the Resource Conservation Act, the differences between the Resource Conservation Act and the Clean Water Act make any waiver less than clear.

Second, section 6961 explicitly discusses injunctive relief twice, but never mentions monetary relief or civil penalties. The last statement of section 6961 specifically waives sovereign immunity for injunctive relief and sanctions to enforce injunctive relief. Also, the parenthetical in section 6961, which lists requirements to which the United States may be subjected, specifically discusses injunctive relief, but it does not mention monetary relief. The list in this parenthetical begins with "including" and we interpret it to be a suggestive rather than exhaustive list. *See P.C. Pfeiffer Co. v. Ford*, 444 U.S. 69, 77 n. 7, 100 S.Ct. 328, 334 n. 7, 62 L.Ed.2d 225 (1979). Yet the specific mention of injunctive sanctions appears to omit civil penalties too neatly to be an accident. It may be that monetary relief and civil penalties are included in "requirements," as suggested above, but such an interpretation would rest on ambiguous evidence.

In order for us to recognize a Congressional waiver of sovereign immunity, the waiver must be clear-cut. *Block v. North Dakota*, 461 U.S. 273, 280, 103 S.Ct. 1811, 1816, 75 L.Ed.2d 840 (1983); *Hancock v. Train*, 426 U.S. 167, 187, 96 S.Ct. 2006, 2016, 48 L.Ed.2d 555 (1976). We find no such clear waiver here. The Ninth Circuit has found a different plausible reading of section 6961 by distinguishing between requirements and enforcement mechanisms. *People v. Walters*, 751 F.2d 977, 978 (9th Cir.1984) (per curiam) (holding that sovereign immunity was not waived to allow state criminal sanctions because such sanctions are enforcement devices). In *United States v. State of Washington*, 872 F.2d 874 (9th Cir.1989), the Ninth Circuit held that the Resource Conservation and Recovery Act did not waive sovereign immunity for civil penalties because such penalties were enforcement mechanisms. Like the

Ninth Circuit, we fail to find a clear waiver of sovereign immunity for civil penalties in section 6961.

### B. *Citizen Suit Provision*

■ Congress clearly waived sovereign immunity for civil penalties in the citizen suit provision of the Resource Conservation and Recovery Act, 42 U.S.C. § 6972.[2] Section 6972 states in relevant part:

(a) Except as provided in subsection (b) or (c) of this section, *any person may commence a civil action on his own behalf—*

(1)(A) *against any person (including (a) the United States, and (b) any other governmental instrumentality or agency,* to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to this chapter; or

(B) *against any person, including the United States and any other governmental instrumentality or agency,* to the extent permitted by the eleventh amendment to the Constitution, and including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment; or

(2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator.

... *The district court shall have jurisdiction,* without regard to the amount in controversy or the citizenship of the parties, to enforce the permit, standard, regulation, condition, requirement, prohibition, or order, referred to in paragraph (1)(a), to restrain any person who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste referred to in paragraph (1)(b), to order such person to take such other action as may be necessary, or both, or to order the Administrator to perform the act or duty referred to in paragraph (2), as the case may be, and *to apply any appropriate civil penalties under section 6928(a) and (g) of this title.*

*Id.* (emphasis added). The State of Ohio may bring its action under the citizen's suit provision because the definition of "person" includes states under the Resource Conservation and Recovery Act. 42 U.S.C. § 6903(15). The citizen's suit provision explicitly allows the action to be brought against the United States or a federal instrumentality, agency, or administrator. In bringing the action, the State of Ohio may seek civil penalties under 42 U.S.C. §§ 6928(a), 6928(g).

The Department of Energy argues that the United States is not included in the scope of the civil penalties allowed under the citizen's suit provision. Civil penalties are included in section 6972 by reference to another section of the Resource Conservation and Recovery Act, 42 U.S.C. § 6928, but the United States is included in the definition of a "person" *only* under section 6972. *Compare* 42 U.S.C. § 6972(a)(1) (specifically including the United States as a "person") *with* 42 U.S.C. § 6903(15) (United States not included in general definition of "person"). In order to find that Congress clearly waived sovereign immunity for civil penalties, we must find that Congress clearly intended that its specific inclusion of the United States for citizen suits would extend to the application of civil penalties.

The fairest reading of section 6972 includes the United States in the application

---

**2.** The Ninth Circuit did not address this issue in either *Walters,* 751 F.2d 977, or *Washington,* 872 F.2d 874.

of civil penalties. Section 6972 incorporates the civil penalty sections, not vice versa. Thus, the definition of "person" within section 6972 applies, not the general definition in 42 U.S.C. § 6903(15). This definition of "person" within section 6972 includes the United States. In addition, the legislative history demonstrates that Congress intended to subject the United States to civil penalties in citizen suits. The Senate Committee stated:

> Either a noncomplying agency [or] the Administrator, if he fails to act, are subject to the citizen suit and penalty provisions of section 7002. To assure that there is no confusion as to this, the amendments to section 7002 continue to use the current statutory language to specifically authorize a suit against "any person, including the United States...."

S.Rep. No. 284, 98th Cong., 1st Sess. 44 (1983). Although this discussion concerns the requirements for federal facilities to submit an inventory of hazardous waste sites to the Environmental Protection Agency, this statement shows the Senate's intent that civil penalties would be available in a citizen's suit against the United States.

Congress's waiver of sovereign immunity for civil penalties accords with the underlying congressional policy of the Resource Conservation and Recovery Act to eliminate the unsafe disposal of hazardous wastes. H.R.Rep. No. 1491, 94th Cong., 2d Sess. 3 (1976), *reprinted in* 1976 U.S.Code Cong. & Admin.News 6238, 6241; *see Franchise Tax Bd. of Cal. v. U.S. Postal Service,* 467 U.S. 512, 521, 104 S.Ct. 2549, 2554, 81 L.Ed.2d 446 (1984). Congress expressed great concern for hazardous waste disposal at federal facilities because the federal government owned over 20,000 such facilities. H.R.Rep. No. 1491 at 46, *reprinted in* 1976 U.S.Code Cong. & Admin.News at 6284. Far from protecting federal facilities from failure to comply with hazardous waste pollution laws, Congress demanded that federal facilities "pro-

vide national leadership in dealing with solid waste and hazardous waste disposal systems." S.Rep. No. 988, 94th Cong., 2d Sess., 24 (1976). In light of these broad goals, the clear interpretation of Congress's later addition of civil penalties is that Congress intended to apply those penalties to federal facilities as well as private entities, consistent with the other aspects of the citizen suit provision.

We find that Congress has waived sovereign immunity for civil penalties under both the Clean Water Act and the Resource Conservation and Recovery Act. Therefore, the judgment of the district court is affirmed.

GUY, Circuit Judge, dissenting.

The majority's opinion in this case establishes that the Federal Water Pollution Control Act (Clean Water Act), 33 U.S.C. § 1323(a), and the citizen suit provision of the Resource Conservation and Recovery Act (RCRA), 42 U.S.C. § 6972, evince congressional intent to waive sovereign immunity as to civil penalties assessed against the United States Department of Energy (DOE). Because I find the waiver in each statute too narrow to support the imposition of civil sanctions in this case, I respectfully dissent from the majority's rulings regarding both the Clean Water Act and the citizen suit provision of the RCRA.[1]

I.

The principle of sovereign immunity is deeply rooted in American jurisprudence. The Supreme Court has consistently emphasized that "[a]s sovereign, the United States, in the absence of its consent, is immune from suit." *Library of Congress v. Shaw,* 478 U.S. 310, 315, 106 S.Ct. 2957, 2962, 92 L.Ed.2d 250 (1986). Therefore, "[t]he States of the Union, like all other entities, are barred by federal sovereign immunity from suing the United States" absent an "express waiver of this immunity

---

1. I agree with the majority's conclusion that the general waiver of sovereign immunity contained in the RCRA, 42 U.S.C. § 6961, does not permit recovery of civil penalties. *See also* *United States v. State of Washington,* 872 F.2d 874, 880 (9th Cir.1989). To that extent, therefore, I join section II(A) of the majority opinion.

**1066**

by Congress." *Block v. North Dakota,* 461 U.S. 273, 280, 103 S.Ct. 1811, 1816, 75 L.Ed.2d 840 (1983). In discerning whether a statute contains such a waiver, courts must not adopt a "crabbed construction" of statutory language or demand that Congress utilize a "ritualistic formula" to relinquish sovereign immunity. *Franchise Tax Board v. United States Postal Serv.,* 467 U.S. 512, 521, 104 S.Ct. 2549, 2554, 81 L.Ed.2d 446 (1984). Nevertheless, it is undisputed that "[a] waiver of sovereign immunity 'cannot be implied but must be unequivocally expressed.'" *Selden Apartments v. United States Dep't of Hous. and Urban Dev.,* 785 F.2d 152, 156 (6th Cir. 1986) (quoting *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 1503, 23 L.Ed.2d 52 (1969)). Accordingly, it is our responsibility to select "[t]he most natural reading" of the statutory terminology in ascertaining whether the United States has waived sovereign immunity. *See Gwaltney of Smithfield v. Chesapeake Bay Found., Inc.,* 484 U.S. 49, 57, 108 S.Ct. 376, 381, 98 L.Ed.2d 306 (1987).

## II.

The Clean Water Act's provision governing federal agencies' obligations, *see* 33 U.S.C. § 1323(a), which became law in its present form in 1977,[2] *see* Pub.L. No. 95–217, § 61(a), 91 Stat. 1598 (1977), contains language differing from the RCRA analogue that the majority properly treats as insufficiently broad to encompass civil penalties. *Compare* 33 U.S.C. § 1323(a) *with* 42 U.S.C. § 6961. Consequently, the majority's conclusion that the general waiver provision in the RCRA "does not permit civil penalties should not automatically be applied to the [Clean Water Act]." *Metropolitan Sanitary Dist. of Greater Chicago v. United States Dep't of the Navy,* 722 F.Supp. 1565, 1570 n. 3 (N.D.Ill.1989). However, I disagree with the majority's interpretation of the general waiver provi-

sion contained in the Clean Water Act as broad enough to support imposition of civil penalties against the DOE.

### A.

Compared to the RCRA's general waiver provision, *see* 42 U.S.C. § 6961, the pertinent portions of 33 U.S.C. § 1323(a) provide a lucid description of the extent to which sovereign immunity has been waived under the Clean Water Act. Specifically, section 1323(a) states:

*Each department, agency,* or instrumentality of the executive, legislative, and judicial branches of the Federal Government ... *shall be subject to,* and comply with, *all* Federal, State, interstate, and local *requirements, administrative authority, and process and sanctions respecting the control and abatement of water pollution* in the same manner, and to the same extent as any nongovernmental entity including the payment of reasonable service charges. The preceding sentence shall apply (A) to any requirement whether substantive or procedural (including any recordkeeping or reporting requirement, any requirement respecting permits and any other requirement, whatsoever), (B) to the exercise of any Federal, State, or local administrative authority, and (C) to any process and sanction, whether enforced in Federal, State, or local courts or in any other manner. *This subsection shall apply notwithstanding any immunity of such agencies,* officers, agents, or employees *under any law or rule of law.... [T]he United States shall be liable only for those civil penalties arising under Federal law* or imposed by a State or local court to enforce an order or the process of such court. (Emphasis added).

The Clean Water Act thus extends the obligation of federal departments and agencies to all "sanctions respecting the control and abatement of water pollution[.]" *See* 33

---

**2.** The statutory language was altered to counteract the Supreme Court's 1976 decisions in *Hancock v. Train,* 426 U.S. 167, 96 S.Ct. 2006, 48 L.Ed.2d 555 (1976), and *EPA v. California ex rel. State Water Resources Control Bd.,* 426 U.S. 200, 96 S.Ct. 2022, 48 L.Ed.2d 578 (1976), which

restricted the sovereign immunity waiver prescribed by the former Clean Water Act and Clean Air Act provisions to substantive standards. *See, e.g.,* S.REP. NO. 370, 95th Cong., 1st Sess. 67, *reprinted in* 1977 U.S.CODE CONG. & ADMIN.NEWS 4326, 4392.

U.S.C. § 1323(a). Moreover, congressional delineation of federal agencies' responsibilities under the Clean Water Act speaks of "any process and sanction" in addition to "any requirement whether substantive or procedural[.]" *Compare id.* § 1323(a)(2)(A) *with id.* § 1323(a)(2)(C). I agree with the majority that this language undoubtedly encompasses civil penalties. However, Congress inserted language in section 1323(a) that limits federal liability to "those civil penalties arising under Federal law[,]" thereby acknowledging the previously expressed waiver of sovereign immunity while circumscribing its scope. *See, e.g., Metropolitan Sanitary Dist.,* 722 F.Supp. at 1571–72. Analysis of section 1323(a) therefore leads to the inescapable conclusion that Congress has waived sovereign immunity in the Clean Water Act for all civil penalties arising under federal, but not state, law.[3]

### B.

The dispositive question in this case, as the majority observes and the district court aptly noted, is whether the civil penalties at issue arise under federal law. *See State of Ohio v. United States Dep't of Energy,* 689 F.Supp. 760, 767 (S.D.Ohio 1988). The State of Ohio contends that its permit system, which is federally approved and monitored, authorizes civil penalties against the DOE for pollution discharge violations. The DOE characterizes Ohio's permit system as purely a state law scheme, and adamantly contests Ohio's assertion that sanctions for violations of its pollution discharge permit arise under federal law. Resolution of this issue, therefore, depends upon the origin and nature of Ohio's permit system.

Although the Clean Water Act prohibits "the discharge of any pollutant into navigable waters[,]" *Gwaltney,* 484 U.S. at 52, 108 S.Ct. at 379 (citing 33 U.S.C. § 1311(a)), an exception to this general rule empowers the Environmental Protection Agency

(EPA) to issue permits allowing pollution discharge "in accordance with specified conditions." *See id.* (citing 33 U.S.C. § 1342(a)). Issuance of a permit "serves to transform generally applicable effluent limitations and other standards—including those based on water quality—into the obligations (including a timetable for compliance) of the individual discharger[.]" *EPA v. California ex rel. State Water Resources Control Bd.,* 426 U.S. 200, 205, 96 S.Ct. 2022, 2025, 48 L.Ed.2d 578 (1976). This permit concept, known as the National Pollutant Discharge Elimination System (NPDES), is operated and policed exclusively by the EPA absent state participation. *See* 33 U.S.C. § 1342(a); *see also American Paper Inst., Inc. v. EPA,* 890 F.2d 869, 871 (7th Cir.1989). The congressionally designed permit scheme, however, leaves substantial leeway for state participation. *See American Paper,* 890 F.2d at 873 ("[T]he Clean Water Act evince[s] a strong congressional intent to make the states, where possible, the primary regulators of the NPDES system.").

As we have explained, 33 U.S.C. § 1342(b) allows a state "to administer its own permit program for discharges into navigable waters within its jurisdiction upon approval of the program by [the] EPA." *United States ex rel. Tennessee Valley Auth. v. Tennessee Water Quality Control Bd.,* 717 F.2d 992, 998 (6th Cir. 1983), *cert. denied,* 466 U.S. 937, 104 S.Ct. 1909, 80 L.Ed.2d 458 (1984). "Once the [EPA]'s approval is given, the State may issue NPDES permits as long as the permits meet the requirements of the [Clean Water Act]." *Ford Motor Co. v. EPA,* 567 F.2d 661, 664 (6th Cir.1977). When a state assumes responsibility for the NPDES permit program, the Clean Water Act "calls for the [EPA] Administrator to suspend the issuance of federal permits as to waters subject to [the] approved state program." *Gwaltney,* 484 U.S. at 52, 108 S.Ct. at 379 (citing 33 U.S.C. § 1342(c)(1)). Neverthe-

---

**3.** The district court in *McClellan Ecological Seepage Situation v. Weinberger,* 655 F.Supp. 601 (E.D.Cal.1986), similarly interpreted 33 U.S.C. § 1323(a), but rejected such a construction as an inadequate "vehicle to end the pollu-

tion which this country is facing[.]" *Id.* at 604. Courts need not debate Congress's sagacity, however, when its intent is so apparent from the face of the statute.

less, the EPA does retain the power to "review operation of a State's permit program[,]" *EPA v. California,* 426 U.S. at 208, 96 S.Ct. at 2026, "veto ... a State's issuance of an individual permit[,]" *Ford,* 567 F.2d at 664, and "withdraw approval of a state permit program which is not being administered in compliance with" 33 U.S.C. § 1342. *EPA v. California,* 426 U.S. at 208, 96 S.Ct. at 2026. Thus, an approved state permit program is largely autonomous, but still subject to general federal oversight.

### C.

The State of Ohio formulated a water pollution control scheme including a NPDES permit program for federal facilities, *see* Ohio Rev.Code Ann. §§ 6111.01 *et seq.* (Anderson 1977 & Supp.1989), which gained EPA approval in 1983. *See* 48 Fed. Reg. 5,918 (1983). Consistent with the Clean Water Act's statutory directive, *see* 33 U.S.C. § 1342(b)(7), the State of Ohio incorporated a civil penalty provision into its permit program. *See* Ohio Rev.Code Ann. § 6111.09. When the State of Ohio assumed administrative and enforcement responsibilities for its NPDES program concerning federal sites in 1983, the state inherited the task of monitoring the DOE's compliance with the permit at issue in this case. The state subsequently became dissatisfied with the DOE's performance at the Fernald facility and filed this suit requesting that the district court impose civil penalties pursuant to the Ohio penalty provision.

Contrary to the majority's conclusion, the civil sanctions prescribed by Ohio's statutory scheme, in my view, do not "aris[e] under Federal law." *See* 33 U.S.C. § 1323(a). Congress therefore has not waived sovereign immunity as to such penalties. Although the Clean Water Act encourages inclusion of "civil and criminal penalties" in state permit programs, *see* 33 U.S.C. § 1342(b)(7), and the EPA retains limited authority to oversee approved state NPDES schemes, the Clean Water Act unequivocally indicates that state permit programs are "establish[ed] and adminis-

ter[ed] under *State* law." *See* 33 U.S.C. § 1342(b) (emphasis added). Moreover, the Clean Water Act's legislative history emphasizes that "state permit programs are 'not a delegation of Federal authority,' but instead are state programs which 'function[ ] in lieu of the Federal program.'" *State of California v. United States Dep't of the Navy,* 845 F.2d 222, 225 (9th Cir. 1988) (quoting H.R.REP. NO. 830, 95th Cong., 1st Sess. 104, *reprinted in* 1977 U.S.CODE CONG. & ADMIN.NEWS 4327, 4479). While "[t]he right of the State [of Ohio] to require discharge permits is derived solely from [33 U.S.C. § 1342]," *Tennessee Water Bd.,* 717 F.2d at 999, the penalty provisions adopted by the State of Ohio in furtherance of its permit program are not grounded in federal law. *See, e.g., U.S. Dep't of the Navy,* 845 F.2d at 225–26. Consequently, sovereign immunity precludes the State of Ohio from pressing its claims for state civil penalties against the DOE under the Clean Water Act. *See id.* I dissent from the majority's contrary conclusion.

### III.

The RCRA's citizen suit provision expressly indicates that "any person may commence a civil action on his own behalf" against "any person, including the United States and any other governmental instrumentality or agency" to redress violations of the RCRA. *See* 42 U.S.C. §§ 6972(a)(1)(A) & (B). Because the RCRA's definition of a "person" includes states, *see* 42 U.S.C. § 6903(15), the majority is correct in finding that the RCRA's citizen suit provision authorizes the State of Ohio to bring a citizen suit against the DOE. However, I believe that the majority errs in defining the scope of the DOE's exposure under the RCRA citizen suit provision to include civil penalties.

According to the RCRA citizen suit provision, "[t]he district court shall have jurisdiction" only to enforce permits and standards, to restrain mishandling of solid or hazardous waste, to order the Administrator to perform specified acts and duties, and "to apply any appropriate civil penal-

ties under section 6928(a) and (g) of this title." 42 U.S.C. § 6972(a); *cf. also Walls v. Waste Resource Corp.*, 761 F.2d 311, 315 (6th Cir.1985) (the "liberal grant of standing to sue" in the RCRA citizen suit provision "is limited by subsequent provisions which restrict the type of relief available to injunctive and other equitable remedies"). Consequently, judicial authority to impose civil penalties in response to RCRA citizen suits is limited to sanctions permitted under 42 U.S.C. §§ 6928(a) and (g). Sections 6928(a) and (g), in turn, permit the imposition of civil penalties against "any person" responsible for violating the RCRA. Whether such penalties may be assessed against the DOE, therefore, depends upon whether the DOE (or the United States in general) can be characterized as a "person" under the RCRA. On this pivotal issue, I disagree with the majority's determination that the federal government constitutes a "person" for purposes of the RCRA.

Congress chose to define the term "person" for purposes of the RCRA to include "an individual, trust, firm, joint stock company, corporation (including a government corporation), partnership, association, State, municipality, commission, political subdivision of a State, or any interstate body." *See* 42 U.S.C. § 6903(15). In a RCRA citizen suit, each of these "persons" is potentially subject to civil penalties as allowed by 42 U.S.C. §§ 6928(a) and (g). Conspicuous by its absence from the statutory list of "persons," however, is the United States. *See McClellan Ecological Seepage Situation v. Weinberger*, 655 F.Supp. 601, 603 (E.D.Cal.1986) ("[T]he general definition of 'person' in RCRA § 1004(15), 42 U.S.C. § 6903(15), ... seems to name everyone under the sun save for the United States of America."). The only reasonable inference that can be drawn from this noticeable omission is "that indeed Congress did not intend, nor did it legislate specifically, a waiver of sovereign immunity for civil

penalties under the [RCRA] citizen suit provision." *Id.* at 603–04.

The majority reads the language from the citizen suit provision authorizing the commencement of an action against "any person, including the United States and any other governmental instrumentality" as incorporating the United States within the definition of a "person" susceptible to civil penalties under 42 U.S.C. §§ 6928(a) and (g). In my view, this language militates *against* the majority's conclusion that the United States is a "person" subject to civil penalties in a RCRA citizen suit. If Congress intended the United States to be a "person" subject to civil penalties, the reference to "any person, including the United States" should have appeared in sections 6928(a) and (g) just as it appears in the citizen suit provision. *See id.* at 604. Contrary to the majority's conclusion, the fairest reading of section 6972 in conjunction with sections 6928(a) and (g) and section 6903(15) is that the United States—including the DOE—is subject to citizen suits brought by states seeking declaratory enforcement orders and injunctive relief, but civil penalties cannot be imposed in such actions against the United States or the DOE.[4] Because the majority opinion misreads the RCRA to broaden the scope of the DOE's potential exposure, I dissent from the majority's RCRA analysis insofar as the citizen suit provision is concerned.

---

4. The exclusion of the United States from the list of "persons" subject to civil penalties seems entirely logical because such penalties assessed under the RCRA are payable "to the United States." *See* 42 U.S.C. § 6928(g); *cf. also Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n*, 453 U.S. 1, 14 n. 25, 101 S.Ct.

2615, 2623 n. 25, 69 L.Ed.2d 435 (1981) (civil penalties assessed in Clean Water Act citizen suits are payable to the federal government). Thus, the civil penalties authorized by the majority, if imposed by the district court, simply will be paid by the DOE to the federal treasury.