# Enforcement Jurisdiction of the Special Counsel for Immigration Related Unfair Employment Practices

Federal agencies are not included in the phrase "person or other entity" in the antidiscrimination provision of the Immigration Reform and Control Act, 8 U.S.C. § 1324b(a)(1). Accordingly, the Special Counsel for Immigration Related Unfair Employment Practices is without authority to bring discrimination charges against federal agencies.

August 17, 1992

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
DEPARTMENT OF THE NAVY

This memorandum responds to your request that we reconsider our opinion of May 2, 1990, in which we concluded that the Antidiscrimination Provision of the Immigration Reform and Control Act, 8 U.S.C. § 1324b(a)(1), authorizes the Special Counsel for Immigration Related Unfair Employment Practices to investigate and prosecute charges of employment discrimination by federal agencies. After evaluating your request for reconsideration and the response of the Special Counsel, we conclude that the federal government is not a "person or other entity" covered by the Antidiscrimination Provision. We withdraw our earlier opinion.[1]

## I.

The Antidiscrimination Provision of the Immigration Reform and Control Act ("IRCA") provides that:

> [i]t is an unfair immigration-related employment practice for a *person or other entity* to discriminate against

---

[1] *See* Memorandum for Andrew M. Strojny, Acting Special Counsel, from Lynda Guild Simpson, Deputy Assistant Attorney General, Office of Legal Counsel, *Re: Department of Defense Cooperation with Investigation of Immigration Related Unfair Employment Practice*, (May 2, 1990) ("OLC Memorandum"); Memorandum for William P. Barr, Assistant Attorney General, Office of Legal Counsel, from Craig S. King, General Counsel, Department of the Navy (May 17, 1990) ("Navy Memorandum"); Memorandum for J. Michael Luttig, Acting Assistant Attorney General, Office of Legal Counsel, from Andrew M. Strojny, Acting Special Counsel (June 1, 1990) ("Special Counsel Memorandum").

any individual (other than an unauthorized alien . . .)
with respect to the hiring, or recruitment or referral for a
fee, of [an] individual for employment or the discharg-
ing of [an] individual from employment —

(A) because of such individual's national origin, or

(B) in the case of a protected individual . . . , be-
cause of such individual's citizenship status.

8 U.S.C. § 1324b(a)(1) (emphasis added). Under IRCA's enforcement pro-
visions, the Special Counsel for Immigration Related Unfair Employment
Practices ("Special Counsel") may file charges against any "person or other
entity" for violation of the Antidiscrimination Provision. Such charges ini-
tially come before an administrative law judge ("ALJ") within the Department
of Justice. *Id.* § 1324b(d)(1). In the event that the Special Counsel does not
file charges with the ALJ within a specified time, the private claimant may
do so directly. *Id.* § 1324b(d)(2).

If the ALJ finds that the defendant "person or other entity" has violated
the Antidiscrimination Provision, the ALJ may order injunctive relief, back
pay, and civil penalties. *Id.* § 1324b(g)(2)(B)(iii)-(iv). Any "person ag-
grieved" by the ALJ's order may seek review in the appropriate court of
appeals, *id.* § 1324b(i)(1), and the district court may enforce the ALJ's order on
petition by the Special Counsel or by the private claimant. *Id.* § 1324b(j)(1).

The events that gave rise to our consideration of this matter began when
Dr. Jacob Roginsky, a naturalized United States citizen who emigrated to
this country from the Soviet Union, filed allegations with the Special Coun-
sel that the Navy had engaged in immigration-related unfair employment
practices prohibited by the Antidiscrimination Provision. The Special Coun-
sel commenced an investigation into Dr. Roginsky's charges. The Navy
declined to cooperate with this investigation, arguing that the Antidiscrimi-
nation Provision does not apply to federal agencies and, hence, that the
Special Counsel lacked authority to investigate. Acting on a request from
the Special Counsel, we issued our opinion of May 2, 1990, in which we
concluded that the Special Counsel had authority to pursue the investigation.
The Navy then requested that we reconsider our opinion. *See* Navy Memo-
randum at 13; *see also* Special Counsel Memorandum at 1.

Thereafter, Dr. Roginsky filed an administrative claim directly against the
Navy. As a result, the Special Counsel no longer had authority to file an
administrative claim on behalf of Dr. Roginsky. *See* 28 C.F.R. § 44.303(d).
We also understand that the dispute involving Dr. Roginsky has been settled.
The precise question addressed by our opinion of May 2, 1990 — whether
the Special Counsel may investigate the charges of immigration-related unfair

employment practices brought by Dr. Roginsky against the Navy — thus is no longer at issue.

The Special Counsel informs us that the complaint by Dr. Roginsky was the first in which the Special Counsel has been required to address the applicability of IRCA to a federal government department or agency. Memorandum for William P. Barr, Assistant Attorney General, Office of Legal Counsel, from Andrew M. Strojny, Acting Special Counsel at 3 (May 7, 1990). The Special Counsel also notes that "[b]ecause the overwhelming majority of federal jobs are restricted [to United States citizens] by statute, regulation or executive order . . . there cannot be a very large number of meritorious charges." Memorandum for William P. Barr, Assistant Attorney General, Office of Legal Counsel, from Andrew M. Strojny, Acting Special Counsel at 7 (Apr. 27, 1990).[2] We nonetheless reconsider the interpretation of IRCA set forth in our earlier opinion because the applicability of that act to federal agencies is an issue of importance.

## II.

The applicability of IRCA to federal agencies turns on whether federal agencies are "person[s] or other entit[ies]" within the meaning of the Anti-discrimination Provision. The phrase "person or other entity" is not defined in IRCA. This broad language might ordinarily be understood to include not only natural persons but virtually all organizations, including public agencies. Our earlier opinion, in fact, rested primarily on the view that "the plain meaning of the phrase 'person or other entity' encompasses . . . 'entit[ies]' such as the United States Government." OLC Memorandum at 3.

On further review, however, we believe that our earlier analysis did not adequately address the sovereign immunity implications of a "plain meaning" interpretation of the phrase and, in particular, on the settled rules of statutory construction that have evolved to preserve sovereign immunity. It is well established that:

> [s]tatutory provisions which are written in such general language that they are reasonably susceptible to being construed as applicable both to the government and to private parties are subject to a rule of construction which exempts the government from their operation in the absence of other particular indicia supporting a contrary result in particular instances.

3 Norman J. Singer, *Sutherland on Statutory Construction*, § 62.01 (5th ed.

---

[2] The Special Counsel has informed us that one other "former Soviet citizen has filed a charge against the [Department of Defense]" and that this investigation is "on hold" pending reconsideration of our May 2, 1990 opinion. *See* Memorandum for J. Michael Luttig, Acting Assistant Attorney General, Office of Legal Counsel, from Andrew M. Strojny, Acting Special Counsel at 2 (Aug. 15, 1990).

1992 rev.); *accord United States v. United Mine Workers of America*, 330 U.S. 258, 272 (1947); *United States v. Cooper Corp.*, 312 U.S. 600, 604 (1941). Therefore, the phrase "person or other entity" should not be read to include federal agencies in the absence of affirmative evidence that Congress intended that they be included. As discussed below, not only is there no evidence that Congress intended to include federal agencies within the phrase "person or other entity," there is considerable evidence that Congress did not intend federal agencies to be included in this term.

## III.

Enforcement of the Antidiscrimination Provision against the federal government plainly would implicate the sovereign immunity of the United States. Sovereign immunity bars an action against the United States if "'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration' . . . or if the effect of the judgment would be 'to restrain the Government from acting, or to compel it to act.'" *Dugan v. Rank*, 372 U.S. 609, 620 (1963)(quoting *Land v. Dollar*, 330 U.S. 731, 738 (1947); *Larson v. Domestic & Foreign Corp.*, 337 U.S. 682, 704 (1949)).[3] The Antidiscrimination Provision authorizes ALJs to enter an order awarding back pay, which would expend itself on the Treasury, or an order requiring the hiring of individuals, which would restrain the United States Government from acting or compel it to act. 8 U.S.C. § 1324b(g)(2)(B)(iii). It also provides for judicial enforcement of such orders by the district courts. *Id.* § 1324b(j). Therefore, the Antidiscrimination Provision may be applied to federal agencies only if Congress has waived the government's sovereign immunity against enforcement actions under section 1324b(j).[4]

In determining whether Congress has waived sovereign immunity, "[i]t is an error to suppose that the ordinary canons of statutory construction are to be applied." *Fidelity Constr. Co. v. United States*, 700 F.2d 1379, 1387 (Fed. Cir.), *cert. denied*, 464 U.S. 826 (1983). In particular, the Supreme Court has held that waivers of sovereign immunity "cannot be implied but must be

---

[3] We assume for purposes of this opinion that sovereign immunity would not bar administrative proceedings in which one executive agency would press charges against another executive agency and final decisional authority would be vested in the Executive. *See* Special Counsel Memorandum at 8-9, 19. We do not believe, however, that this assumption bears on the specific question presented here, because disputes under IRCA are subject to judicial enforcement procedures and thus are not resolved entirely within the executive branch. *See supra* p. 122 .

[4] The Antidiscrimination Provision also contemplates judicial enforcement of civil penalties, 8 U.S.C. § 1324b(g)(B)(iv), (j), payable into the Treasury. The assessment of a civil penalty against a federal agency in a sense would *not* expend itself upon the fisc, because it would not have any net effect on the Treasury balance. Nor would the assessment of a civil penalty against an agency serve the goal of deterrence. Because there are no appropriations in agency budgets for payment of IRCA penalties, the funds to pay such penalties presumably would be drawn from the general fund of the Treasury, 31 U.S.C. § 1304(a), and then returned to that same fund as miscellaneous receipts, 8 U.S.C. § 1356(c), with no effect whatsoever on the defendant agency. The fact that application of the Antidiscrimination Provision to federal agencies would render one aspect of the enforcement scheme ineffectual provides independent reason to question the application of the provision to these agencies.

124

unequivocally expressed." *United States v. King*, 395 U.S. 1, 4 (1969); *see also United States v. Mitchell*, 445 U.S. 535, 538 (1980). This requirement of an unequivocal expression of a waiver of sovereign immunity has recently been reaffirmed in a number of decisions. *See United States Dep't of Energy v. Ohio*, 503 U.S. 607, 615 (1992); *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33 (1992); and *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95 (1990).[5] As a general matter, waivers of sovereign immunity take the form of explicit statements that the federal government is subject to a statutory rule or will be subject to suit.[6] Statutes explicitly providing a right of action against a federal entity or conferring jurisdiction on a court to resolve claims against the federal government also have been held to constitute waivers of sovereign immunity.[7]

IRCA does not contain any waiver of sovereign immunity in the form of a substantive rule that explicitly applies to the United States. Nor is there any specific grant of jurisdiction to resolve claims against the federal government. In these respects, the contrast between IRCA and Title VII of the Civil Rights Act of 1964 is especially instructive on Congress's intent in enacting IRCA. Unlike in IRCA, Congress expressly brought within the ambit of Title VII federal "executive agencies as defined in section 105 of title 5," 42 U.S.C. § 2000e-16(a), and it did so because otherwise a claimant would have to "overcome a U.S. Government defense of sovereign immunity." S. Rep. No. 415, 92d Cong., 1st Sess. 16 (1971). The absence of any reference to the federal government in IRCA is particularly significant in light of the settled law prior to IRCA's enactment that Title VII provides the

---

[5] The Special Counsel cites two Supreme Court cases on the standard for waivers of sovereign immunity, but neither is relevant in the present context. *Keifer & Keifer v. Reconstruction Fin. Corp.*, 306 U.S. 381 (1939), involved a claim against a government corporation. It has long been recognized that government corporations may be sued in the same manner as private corporations. *Id.* at 390. The application of IRCA contemplated here, however, would involve neither a government corporation nor any other specialized organizational form the use of which would subject the United States to suit. In *Franchise Tax Bd. v. United States Postal Serv.*, 467 U.S. 512 (1984), the scope rather than the existence of a waiver of sovereign immunity was at issue. The Court cited *Keifer* for the proposition that "intent to waive immunity . . . can only be ascertained by reference to underlying congressional policy." *Id.* at 521.

[6] *See, e.g.*, Civil Rights Act of 1964, 42 U.S.C. § 2000e16(a); Clean Air Act, 42 U.S.C. §§ 7418(a), 7604(a)(1); Clean Water Act, 33 U.S.C. §§ 1323, 1365; Resource Conservation and Recovery Act, 42 U.S.C §§ 6961, 6972(a)(1)(a); Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9620(a).

The Secretary of Labor's decision in *Pogue v. Department of the Navy*, Secretary of Labor Case No. 87-ERA-21 (May 10, 1990), on which the Special Counsel relies, is not to the contrary. The determination that sovereign immunity does not shield the federal government from the "whistleblower" provision of CERCLA rested on the applicable statutory definition of "person," which expressly includes the "United States Government." 42 U.S.C. § 9601(21). Congress, moreover, expressly provided that "[e]ach department, agency, and instrumentality of the United States . . . shall be subject to, and comply with, this chapter [including the whistleblower provision] in the same manner and to the same extent, both procedurally and substantively, as any nongovernmental entity." *Id.* § 9620(a)(1).

[7] *See Schlafly v. Volpe*, 495 F.2d 273, 282 (7th Cir. 1974) (finding waiver of sovereign immunity in right of action to contest discriminatory suspension of federal financial assistance in 42 U.S.C. § 2000d-2); *McKenzie v. United States*, 536 F.2d 726, 728 (7th Cir. 1976) (finding waiver of sovereign immunity in express grant of jurisdiction to bankruptcy courts to resolve federal tax liability of bankrupt entities under 11 U.S.C. § 11(a)(2A)).

*exclusive* remedy against federal agencies for complaints of national origin discrimination. *See Brown v. General Services Admin.*, 425 U.S. 820, 829 (1976). Despite extensive discussion of the relationship between IRCA and Title VII with respect to private employers, there is no evidence in the committee reports on IRCA that Congress intended IRCA to supplement the exclusive Title VII remedy against federal agencies. *See* H.R. Rep. No. 682, 99th Cong., 2d Sess., pt. 1, at 69-70 (1986); *id.*, pt. II, at 12; *see also* Navy Memorandum at 11; *infra* pp. 127-28. Accordingly, we conclude that Congress has not waived the sovereign immunity of the United States for claims under IRCA.

In our prior opinion, we relied upon the exception to the Antidiscrimination Provision of IRCA for discriminatory actions required by executive order, section 1324b(a)(2)(C), to support our conclusion that federal agencies were covered by IRCA. We reasoned there that "the creation of an exception for discrimination required by [executive] orders strongly suggests that Congress understood federal agencies otherwise to be within the scope of the antidiscrimination provision" because "executive orders govern the employment decisions of the federal government rather than those of private entities." OLC Memorandum at 4. It is clear that we were proceeding at that point in the opinion on an assumption that executive orders never govern actions of private employers. In fact, however, some executive orders do affect private parties. For example, Executive Order No. 10865, 3 C.F.R. § 62 (1960), *reprinted in* 50 U.S.C. § 435 note, effectively forbids certain private employers conducting business with the government from hiring individuals who, due to their citizenship status, could not obtain the requisite security clearance.[8]

Having focused on the fact that some executive orders do extend to private employers, we believe that the exception for "executive orders" must be understood as directed at "discrimination" by government contractors pursuant to executive orders such as No. 10865, not at the actions of federal government agencies. This is the more natural understanding of the exception, given that it appears among other exceptions that apply to discrimination by government contractors. It is merely one of several exceptions for decisions made on the basis of citizenship status that are "required by Federal, State, or local government contract, or which the Attorney General determines to be essential for an employer to do business with an agency or department of the Federal, State, or local government." 8 U.S.C. §

---

[8] Section 1(a) of Executive Order No. 10865, requires the issuance of regulations to govern "releases of classified information to or within United States industry that relate to bidding on, or the negotiation, award, performance, or termination of, [government] contracts." These regulations require security clearances for private employees to whom classified information may be released. *See, e.g.*, 10 C.F.R. pt. 710 (security clearance program for contractors handling nuclear material); 32 C.F.R. pt. 155 (security clearance program for defense contractors).

The Special Counsel asserts that Congress enacted the exception for executive orders specifically to address Executive Order No. 11935, 3 C.F.R. 146 (1977), *reprinted in* 5 U.S.C. § 3301 note, which provides that "[n]o person shall be given any appointment in the competitive service unless such person is a citizen or national of the United States." *See* Special Counsel Memorandum at 4. The Special Counsel cites no authority in support of this assertion, and we have discovered none.

1324b(a)(2)(C). Of course, when it is understood that the exception was included so as to exempt private employer activities required by law, the existence of the exception does not support the inference that federal agencies would otherwise be covered by the Antidiscrimination Provision.[9] The exception plainly does not constitute an "unequivocal" expression of congressional intent to waive the sovereign immunity of the United States.

To the extent that there is any evidence in the legislative history on the specific question presented here, it too suggests that Congress did not contemplate that federal agencies would be included under the Antidiscrimination Provision. First, there is no express discussion of the application of IRCA to federal agencies, which one would certainly expect to find if Congress intended to cover these agencies. Second, although the committee reports on the bills that became IRCA and on similar proposals from earlier Congresses include detailed estimates of the enforcement costs of the legislation to the federal government, they make no mention of compliance costs. *See* S. Rep. No. 485, 97th Cong., 2d Sess. 52-56 (1982); S. Rep. No. 62, 98th Cong., 1st Sess. 57-64 (1983); H.R. Rep. No. 115, 98th Cong., 1st Sess., pt. 1, at 99-107 (1983); S. Rep. No. 132, 99th Cong., 1st Sess. 57-66 (1985); H.R. Rep. No. 682, 99th Cong., 2d Sess., pt. 1, at 128-29 (1986). Had Congress understood that the federal government would come within IRCA, these reports almost certainly would have included cost estimates for federal agency compliance.[10]

The Special Counsel relies primarily on a passage from the Senate Report on IRCA in support of his position that federal agencies are included within the act. The passage states that the phrase "person or other entity," as used in the Employer Sanction Provision, covers "individuals, partnerships, cor-

---

[9] The Special Counsel argues that, even if IRCA itself does not waive sovereign immunity, a private claimant nonetheless may obtain judicial enforcement of the Antidiscrimination Provision by invoking the waivers contained in the Administrative Procedure Act, the Federal Tort Claims Act, and the Tucker Act. *See* Special Counsel Memorandum at 10 n.7. The assertion that other avenues may be available for judicial enforcement of the substantive provisions of the Antidiscrimination Provision is not responsive to the conclusion that we reach above. Our point is not that the courts may never enforce a substantive rule of conduct against the federal government; rather, it is that the substantive rules of the Antidiscrimination Provision, read in light of longstanding principles of statutory construction, do not encompass governmental conduct.

Moreover, we are unaware of any evidence that Congress wished to include federal agencies within the Antidiscrimination Provision but to relegate claims against these agencies — unlike claims against private entities — to an enforcement scheme different from that set forth in the provision. The more plausible inference is that Congress did not intend the Antidiscrimination Provision to cover federal agencies in the first place. In fact, the provisions relied on by the Special Counsel would provide relief against federal agencies less complete than, or inconsistent with, the provisions in IRCA. The Administrative Procedure Act waives sovereign immunity for suits brought by persons "aggrieved by agency action" but permits only those suits that "seek[] relief *other than money damages.*" 5 U.S C. § 702 (emphasis added). The waivers in the Federal Tort Claims Act (28 U.S C. § 1346(b)) and the Tucker Act (28 U.S C. §§ 1346(a)(2), 1491) would permit damage actions but would provide for a sequence of judicial review -- involving either the district court or the Claims Court -- that is inconsistent with that provided in the Antidiscrimination Provision.

[10] The Supreme Court has recently stated that "the 'unequivocal expression' of elimination of sovereign immunity that we insist upon is an expression in statutory text If clarity does not exist there, it cannot be supplied by a committee report." *United States v. Nordic Village, Inc*, 503 U.S. 30, 37 (1992) (citations omitted). Our analysis of the legislative history is thus purely confirmatory.

127

porations and other organizations, nonprofit and profit, private and *public*, who employ, recruit, or refer persons for employment in the United States." S. Rep. No. 132, at 32 (emphasis added). Even if we were to discount the Supreme Court's statement in *Nordic Village* and accept the assertion that Congress could waive sovereign immunity through legislative history, we could not conclude that the mention of "public" employers in this passage compels the inclusion of federal agencies within the coverage of IRCA. States and municipalities may act as employers and many states operate employment agencies. All of these entities would be "public" employers and thus could well be the organizations referenced in the Senate Report.[11]

## IV.

Our conclusion that the phrase "person or other entity" as used in the Antidiscrimination Provision does not include federal agencies is reinforced by the fact that a contrary construction would raise serious separation of powers issues. Were we to conclude that federal agencies are subject to the Antidiscrimination Provision, an officer within the Department of Justice, 8 U.S.C. § 1324b(c)(1), would have authority to sue other federal agencies in federal court. *Id.* § 1324b(j)(1) (authorizing Special Counsel to seek enforcement by the district court of ALJ orders). Such intra-executive branch litigation likely would contravene Articles II and III of the Constitution.

By its terms, Article II vests the entire executive power in the President. U.S. Const. art. II, § 1, cl. 1. As a necessary concomitant to this exclusive grant of power, the President has the authority to resolve intra-executive branch disputes in order to secure "that unitary and uniform execution of the laws which Article II of the Constitution evidently contemplated in vesting general executive power in the President alone." *Myers v. United States*, 272 U.S. 52, 135 (1926). Suits by one executive branch agency against another, however, would, in likely contravention of Article II, transfer the power to resolve such disputes from the President to the federal courts. *See generally Constitutionality of Nuclear Regulatory Commission's Imposition of Civil Penalties on the Air Force*, 13 Op. O.L.C. 131, 135-38 (1989).

Intra-executive branch lawsuits would also raise serious questions under Article III of the Constitution. Article III courts may resolve only those

---

[11] The Special Counsel also cites the House Report on IRCA, which states that the Employer Sanction Provision applies to "all employers regardless of the number of employees, as well as to those persons who recruit or for a fee refer undocumented aliens for employment." H.R. Rep. No. 682, at 56. This statement adds nothing to the statement in the Senate Report; in fact, unlike the Senate Report, the House Report does not even state that "public" entities are included within the Employer Sanction Provision.

Apart from legislative history, the Special Counsel observes that regulations promulgated by the Immigration and Naturalization Service for enforcement of the Employer Sanction Provision define the term "entity" to include "governmental bod[ies]." 8 C.F.R. § 274a.1(b). The regulation does not refer explicitly to the *federal* government, however, and in any event, administrative regulations "can neither enlarge nor diminish the scope of the waiver of immunity" set forth by Congress in the underlying statute. *Millard v. United States*, 16 Cl. Ct. 485, 490 (1989), *aff'd*, 916 F.2d 1 (Fed. Cir. 1990), *cert. denied*, 500 U.S. 916 (1991).

disputes in which there is a genuine "Case[]" or "Controvers[y]" involving a concrete adversity of interests between the parties. U.S. Const. art. III, § 2. Given that there is ultimately but a single interest of the executive branch — that determined by the President — litigation between two executive agencies would not appear to involve the requisite adversity of interests to constitute a "Case[]" or "Controvers[y]" within the meaning of Article III. *See, e.g., Defense Supplies Corp. v. United States Lines Co.*, 148 F.2d 311, 312-13 (2d Cir.), *cert. denied*, 326 U.S. 746 (1945) (dismissing suit against United States by a corporation whose stock was wholly owned by the United States on ground that "this [is] . . . nothing more than an action by the United States against the United States . . . . [T]here is no real case or controversy."); *United States ex. rel. TVA v. Easement and Right of Way*, 204 F. Supp. 837, 839 (E.D. Tenn. 1962) ("[I]nter-agency disputes . . . are not subject to settlement by adjudication . . . . The settlement of interagency problems within the United States Government is not a judicial function but rather an administrative function."); 13 Op. O.L.C. at 138-141; *Proposed Tax Assessment Against the United States Postal Service*, 1 Op. O.L.C. 79, 81-82 (1977).[12]

Interpreting the phrase "other entit[ies]" to include federal agencies would also raise the troublesome specter of litigation by the executive branch against coequal branches of the federal government, for there would be no principled basis on which to exclude the Congress and the judiciary from the reach of the Antidiscrimination Provision. Given the extraordinary nature of litigation by the executive branch — here, the Special Counsel — against coequal branches of the government, we hesitate to infer that such was authorized by Congress in the absence of affirmative evidence. This reticence is particularly appropriate given that Congress has taken great care to condition the applicability of other federal employment laws to itself and the judiciary.[13]

---

[12] The courts sometimes decide cases nominally between two executive branch bodies, where one of the parties in interest is a private entity not within the President's control. *See, e.g., United States v. ICC*, 337 U S. 426 (1949) (United States in its proprietary status as a'shipper sought from railroads monetary relief that had been denied by the Interstate Commerce Commission); *Secretary of Agriculture v. United States*, 347 U.S. 645 (1954) (Secretary of Agriculture intervened in action by private agricultural interests before the ICC to recover for railroad overcharges); *Udall v. Federal Power Comm'n*, 387 U.S. 428 (1967) (Secretary of Interior intervened on behalf of private power company and municipality seeking Federal Power Commission approval of dam); *United States v. Federal Maritime Comm'n*, 694 F.2d 793 (D.C. Cir. 1982) (Department of Justice challenged ocean carriers' agreement that earlier had been approved by Federal Maritime Commission).

In an enforcement action brought by the Special Counsel against a federal agency, however, the United States would be the real party in interest on both sides of the litigation. The defendant would be an agency of the United States, and the real party in interest on the prosecution side would also be the United States, acting in its sovereign capacity. Only where the Special Counsel has declined to sue and a claimant brings suit directly against a "person or other entity" alleged to have engaged in discrimination, *see* 8 U.S.C. § 1324b(d)(2), could there exist the requisite concrete adversity of interests, because only in this circumstance would one of the litigants be beyond presidential control.

[13] For example, in enacting the Civil Rights Act of 1991, Congress substantially limited the procedural protections and enforcement provisions available to plaintiff-employees seeking various types of relief against Congress. *See* §§ 117, 301-314 of the Civil Rights Act of 1991, Pub L. No. 102-166, 105 Stat. 1071, 1080, 1088-95 (1991) (providing for procedures and remedies available to House and Senate employees under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e-16), and also providing for

Continued

129

The problems with interpreting the phrase "person or other entity" in IRCA to include federal agencies would not be confined to the Antidiscrimination Provision alone. For example, many of the difficulties identified above would also exist with respect to the parallel Employer Sanction Provision of IRCA, which prohibits the hiring by any "person or other entity" of "unauthorized alien[s]." 8 U.S.C. § 1324a(a)(1).[14] Were we to conclude that federal agencies are "person[s] or other entit[ies]," the Employer Sanction provision would contemplate the imposition of mandatory civil penalties on the government, id. § 1324a(e)(4), requiring a waiver of sovereign immunity. It would permit the imposition of criminal penalties on a federal agency, id. § 1324a(f)(1), without any specific evidence that such an extraordinary measure was intended. Moreover, because the exclusive enforcement mechanism for such penalties would be a suit by the Attorney General against another federal agency, id. § 1324a(e)(9), the Attorney General could bring an enforcement action against another executive agency and indeed against the Congress or the judiciary.[15]

The Supreme Court has admonished that constructions of a statute that would render it constitutionally suspect should be avoided where a reasonable alternative reading of the statute is available. See DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council, 485 U.S. 568, 575 (1988); NLRB v. Catholic Bishop of Chicago, 440 U.S. 490, 501 (1979). Here, such a reading — under which the phrase "person or other entity" would not include the federal government — not only is reasonable but is consistent with established principles of statutory construction and sovereign immunity.

[13] (....continued)

procedures and remedies for Senate employees under the Age Discrimination in Employment Act of 1967 (29 U.S.C. § 633a), and the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12112-12114)).

Prior to enactment of the Civil Rights Act of 1991, Title VII barred executive branch agencies from discriminating on the basis of "race, color, religion, sex, or national origin," but that prohibition applied only to those few "units of the legislative and judicial branches . . . having positions in the competitive service." 42 U.S.C. § 2000e-16(a). The Fair Labor Standards Act was, and still is, similarly limited. 29 U.S.C. § 203(e)(2)(A)(iii).

[14] Congress enacted the Antidiscrimination Provision in response to the concern that employers might discriminate as a result of the Employer Sanction Provision against persons legitimately in this country. See H.R. Rep. No. 682, at 68. Thus, "[t]he antidiscrimination provisions of th[e] [statute] are a complement to the sanctions provisions, and must be considered in this context." H.R. Conf. Rep. No. 1000, 99th Cong., 2d Sess. 87 (1986). The same "person[s] or other entit[ies]" are subject to both the Antidiscrimination Provision and the Employer Sanction Provision.

[15] Application of the Employer Sanction Provision of IRCA to federal agencies would bar those agencies from hiring only two narrow classes of aliens not already barred by Exec. Order No. 11935, see supra note 9, and similar restrictions found in annual appropriations since 1943. See, e.g., Treasury, Postal Service and General Government Appropriations Act, 1992, Pub. L. No. 102-141, § 607, 105 Stat. 834, 868-69 (1991) ("Appropriations Act for 1992") (current appropriation); 5 U.S.C. § 3101 note (listing prior appropriations). Specifically, such an application of IRCA would prohibit federal agencies from hiring for a position outside of the competitive service (i.e., a position not covered by Exec. Order No. 11935), those few unauthorized aliens to whom compensation otherwise may be paid under an exception to appropriations legislation. Such individuals would have to be "person[s] in the service of the United States . . . who, being eligible for citizenship, ha[ve] filed . . . declaration[s] of intention to become . . . citizen[s] of the United States . . . and [are] actually residing in the United States," or "person[s] who owe[] allegiance to the United States," or foreign nationals of certain specified countries. Appropriations Act for 1992, § 607, 105 Stat. at 868-69. There is no evidence that Congress wished to subject federal agencies to the Employer Sanction Provision of IRCA to obtain this incremental additional coverage.

130

## CONCLUSION

We conclude on careful reconsideration of the statutory text of IRCA, its structure, purpose, and legislative history that federal agencies are not included within the phrase "person or other entity" in 8 U.S.C. § 1324b(a)(1). Accordingly, the Special Counsel is without authority to investigate or to bring charges of immigration-related employment discrimination against federal agencies. Discrimination by federal agencies based upon national origin is fully redressable under Title VII of the Civil Rights Act of 1964, which by its terms applies to federal executive agencies.[16]

Our contrary opinion of May 2, 1990, is withdrawn.

JOHN C. HARRISON
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[16] Title VII does not provide a remedy for employment discrimination based upon citizenship status. However, since 1943, annual appropriations acts passed by Congress have, with narrow exceptions, prohibited the use of appropriated funds to pay salaries to federal employees who are not "citizen[s] of the United States." *See, e.g.,* Appropriations Act for 1992, § 607, 105 Stat. at 868-69 (current appropriation); 5 U.S.C. § 3101 note (listing prior appropriations); *see also supra* note 15. As the Special Counsel observes, "the vast majority of federal civil service positions are open only to United States citizens." Special Counsel Memorandum at 4. Thus, there are only a limited number of circumstances in which there is even the potential for a cognizable claim of citizenship status discrimination.

Of course, our opinion does not preclude federal agencies, as a matter of policy, from continuing to adhere to the immigration status verification procedures prescribed by the Office of Personnel Management. *See* Federal Personnel Manual Supplement 296-33, Subch. 5-2.6a (1988) (requiring use of Standard Form I-9).